102 So.2d 904

**Bill RHODES et al.**

**v.**

**A. H. TOMLIN et al.**

**3 Div. 767.**

Supreme Court of Alabama.

Jan. 23, 1958.

Rehearing Denied June 5, 1958.

492

Godbold, Hobbs & Copeland, Montgomery, for appellees.

SIMPSON, Justice.

The appellees, A. H. Tomlin and wife Ruth Tomlin, filed a bill in equity against the appellants, Bill Rhodes and wife Margie Rhodes and Herman Roberson, to rescind a contract for the sale of realty and to recover the earnest money and installment payments made on the purchase price. The trial court, after hearing the evidence ore tenus and after allowing the appellants two extended periods in which to clear the title, decreed that the contract should be rescinded and that the complainants should recover of the respondents the money paid under the contract. The decree impresses us as being inconsistent in one respect, requiring a reversal to this extent.

Appellant Roberson was the agent of appellants Rhodes to sell a house and lot owned by the Rhodeses. An agreement was reached between agent Roberson and the purchasers Tomlin whereby the Tomlins would purchase the property from the Rhodeses at an agreed price. The con-

Ben Hardeman, Montgomery, for appellants.

tract was signed by the Rhodeses and the Tomlins, but it does not appear that the parties knew each other. Roberson handled the transaction between them as agent of the Rhodeses. Seven hundred dollars ($700) earnest money was paid in cash by the appellees when the contract was executed and the first six monthly payments of $100 each were made; subsequently several monthly payments of $50 each were made. Appellees went into possession of the property as provided they could do under the contract.

The contract, as pertinent, provided:

"The sellers agree promptly to furnish the purchasers with an up-to-date abstract of title, and * * *, the sellers delivering to the purchasers a Warranty Deed, free of any and all encumbrances, Taxes, assessments, and insurance shall be prorated as of the date of the consummation of the sale."

The basis of the appellees' claim for a rescission, and accepted by the trial court, was that the sellers failed to deliver a merchantable title as was provided in the contract, thereby entitling them to rescind the contract and recover the money paid under it.

It is the contention of the appellants, however, as shown by their answer and cross-bill, that they had complied with the contract by delivering a merchantable title and "up-to-date abstract of title", and that therefore they were entitled to a decree of specific performance as prayed for in the cross-bill.

■ On a careful review of the evidence, we entertain the view that the record fails to show that the Rhodeses fulfilled the condition of the contract by delivering to the appellees a good and merchantable title. As stated, the court gave the Rhodeses two extensions in order to clear the property of certain liens, but so far as the record shows, they were never cleared and the court so decreed. Appellants argue that the title was cleared, but it does not appear of record, and

therefore cannot be considered. Davis & Co. v. Thomas, 154 Ala. 279, 45 So. 897; Wells v. Wright, 219 Ala. 261, 122 So. 167; McCormick v. County Board of Revenue of Marshall County, 223 Ala. 453, 137 So. 171; Bell v. Bell, 245 Ala. 513, 17 So.2d 872; White v. State ex rel. Fowler, 262 Ala. 694, 81 So.2d 267. It is our view, therefore, that the decree of the trial court ordering a rescission is well founded.

■ It is proper here to mention the appellants Rhodeses' cross-bill, where they prayed for a decree for the reasonable rental of the premises during the occupancy of the property by the appellees and for other relief. No relief under the cross-bill could be had since it was not made an issue in the case. No answer was filed to it, and there was no decree pro-confesso thereon. Where a cross-complainant files a cross-bill but does not insist upon an answer or move for a decree pro-confesso, but proceeds to trial without objection, the cross-bill is treated as abandoned. Wahouma Savings Bank v. Southern Plumbing & Heating Co., 220 Ala. 140, 124 So. 388; Wilkins v. Reliance Equipment Co., 259 Ala. 348, 67 So.2d 16.

We mentioned at the outset that the decree is inconsistent. We regard it so to the extent that it holds both the Rhodeses (vendors) and Roberson (agent) liable for the money paid under the contract. As stated in Eufaula Grocery Co. v. Missouri National Bank, 118 Ala. 408, 414, 24 So. 389, 391:

"An election to hold the one is a renunciation of all remedy against the other. If the principal be sued, he must be at liberty to receive the money from the agent. The plaintiff cannot coerce money out of him, and, pending the proceeding for that purpose, stop it in the hands of the agent, depriving him (the principal) of the means of obtaining it to meet the plaintiff's recovery against him. For the same reason, if the election is to hold the agent, and the proper notice is given

to stop the money in his hands, the principal could not thereafter be properly sued. The remedies are, indeed, in every respect, inconsistent, not concurrent."

We do not think that the facts justify the decree against Roberson, since although he was the agent of the Rhodeses in receiving the money from the appellees under the contract he was authorized by the Rhodeses to apply that money he had received on a mortgage debt on the property owed by the Rhodeses to him. The general rule is stated in Cassimus v. Vaughn Realty Co., 217 Ala. 561, 117 So. 180:

"'So long as the money has not been paid over by the agent to his principal; nor his situation altered, relatively [sic] to his principal, as touching that fund, it may be recovered from him [the agent].'"

■ This principal requires a reversal of the decree holding Roberson liable since after the Tomlins paid the money over to him, his situation had changed. The general rule is that where the agent has paid the money over to his principal, he, the agent, cannot be held liable. 2 Am.Jur. 264, § 336; 3 C.J.S. Agency § 217, p. 126; Hunter v. Lauderdale Cotton Mills, 215 Ala. 638, 112 So. 215; Harduval v. Mitchell, 220 Ala. 595, 127 So. 168; Clifton v. Curry, 30 Ala. App. 584, 10 So.2d 51; Cassimus v. Vaughn Realty Co., supra.

■■ In the instant case agent Roberson had applied the money paid him on the mortgage debt, as directed by his principal, and when a principal authorizes his agent who has in his hands money collected for the principal to appropriate the money given to the cancellation of an indebtedness due by the principal to the agent, this is held to be equivalent to the agent's paying the money to his principal. Home Realty Corporation v. Morrow, 27 Ga.App. 385, 108 S.E. 481. See also 2 C.J., § 495, pp. 822–823; See also 3 C.J.S. Agency § 217; Becsey v. California Title Ins. & Trust Co.,

192 Cal. 632, 221 P. 356; also Hurricane Milling Co. v. Steel & Payne Co., 84 W.Va. 376, 99 S.E. 450, 6 A.L.R. 641; Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371.

It is finally urged by appellants that the court erred in holding Mrs. Rhodes liable for the refund of the money to the appellees, because it violated the statute precluding holding the wife liable as surety for her husband. However, such is not the the status of the Rhodeses or the effect of the decree. Street v. Alexander City Bank, 203 Ala. 97, 98, 82 So. 111, 112, discussed the effect of Section 74, Title 34 of the Code as follows:

"Section 4497 [Title 34, § 74] of the Code provides that 'the wife shall not, directly or indirectly, become the surety for the husband.' 'The statute is founded upon public policy which is to protect the wife's estate as against the influence of her husband or other person, or her own inclination, in respect to subjecting it to her husband's debts.' Richardson v. Stephens, 122 Ala. 301, 307, 25 So. 39, 41. It has been liberally construed and zealously applied by the courts for the accomplishment of its obvious design, as our numerous decisions will show. * * *

"Nevertheless it is clearly settled that the wife cannot invoke the protection of the statute in avoidance of her obligation, unless it was given for the security of a debt, either pre-existing or presently created, for the payment of which the husband is liable, or unless it is given to the husband's creditor, or to some intermediary for his benefit, in substitution for an existing debt of the husband's, which is nominally satisfied by the wife's obligation or by its proceeds. * * * In dealing with these transactions, courts look through the form to the substance; but, to be obnoxious to the statute, the substance must, when analyzed, disclose a debt or obligation due from the husband to the

person who seeks to enforce the ancillary promise of the wife. If there was no such debt, there can be no occasion for the operation of the statute. In that case, although the loan is made to the wife, upon the application of the husband, and the proceeds are intended for his exclusive benefit, and in fact devoted to his exclusive use, the wife's obligation is primary and independent, and does not fall within the inhibition of the statute."

■ We think Mrs. Rhodes' status is governed by the foregoing decision, and that her situation in the present case does not make her surety for her husband's debt.

It is proper to here take notice of the amendment passed by the regular session of the 1957 legislature eliminating the clause prohibiting the wife from becoming surety for her husband, Act No. 62 approved June 21, 1957. But this amendment does not affect the instant question.

■ The appellees' cross-assigned errors. The only one argued is the failure of the trial court to award the value of permanent improvements allegedly placed on the property by the appellees. No proper evidence was adduced to guide the trial court in the fixing of the value of such improvements and of consequence the assignment is not well taken. The proper method of proof in awarding the value of permanent improvements is the amount by which the improvements have increased the value of the property. 55 Am.Jur. 1005, § 612; 91 C.J.S. Vendor & Purchaser § 179(b), p. 1152; 48 A.L.R. 64.

It results that the decree should be affirmed as to the Rhodeses and reversed and rendered as to appellant Roberson.

Affirmed in part and in part reversed and rendered.

LAWSON, GOODWYN, and MERRILL, JJ., concur.