HAZEL A. STAFFORD and HAZEL A. STAFFORD, AS EXECU-
TRIX OF THE ESTATE OF EDGAR G. STAFFORD, DECEASED, PLAIN-
TIFFS AND RESPONDENTS, *v.* ROLLAND M. LOVE AND MAR-
GUERITE V. LOVE, HUSBAND AND WIFE, DEFENDANTS AND
RESPONDENTS, ROBERT J. YEOMAN, D/B/A YEOMAN REAL-
TY AND WESTCHESTER FIRE INSURANCE CO., A NEW YORK COR-
PORATION, DEFENDANTS AND APPELLANTS.

No. 11358.
Decided May 27, 1968.
Rehearing Denied June 18, 1968.
442 P.2d 190.

Tipp, Hoven & Brault, Vernon B. Hoven (argued), Missoula, for appellants.

Jardine, Stephenson, Blewett & Weaver, Arthur S. Jardine

(argued), Scott & Linnell, Wayne E. Linnell (argued), Great Falls, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an action in the District Court of the Eighth Judicial District, Cascade County, the Honorable Victor H. Fall presiding without a jury. The plaintiff, Mrs. Hazel A. Stafford, in her own name and as executrix of the estate of her husband, Edgar G. Stafford, sought cancellation of a contract for the sale of land between herself and defendants Rolland M. and Marguerite Love, husband and wife, and also damages from the Loves and from Yeoman Insurance Company, d/b/a Yeoman Realty, and Westchester Fire Insurance Company. Westchester, a New York Corporation, was the surety on Yeoman's bond.

In the action below the Loves had counterclaimed against Yeoman Realty and Westchester Fire Insurance Company for damages. Mrs. Stafford was awarded damages from all defendants, and the Loves obtained an award of damages from Yeoman Realty and Westchester Fire Insurance Company. Yeoman Realty and Westchester Fire Insurance Company have appealed both the judgments against them. The Loves have not appealed the judgment entered against them.

The facts of this case are as follows. Mr. and Mrs. Stafford were the owners of a ranch located approximately five miles north of the City of Great Falls, Montana. A title abstract had fee simple title to only 680 acres of that acreage. Approximately 80 acres of the 750 acres that were for sale were contained in two previously platted subdivisions in Cascade County known as the Barnes and North Side additions; and the Staffords did not own approximately 90 lots situated in these additions. Their ownership of the balance of the lots in both of the additions was based upon tax deeds from Cascade County. An additional small amount of acreage had been sold to the Mountain States Telephone and Telegraph Company and another small portion had been leased to a shale company.

Mr. and Mrs. Stafford were desirous of selling their ranch.

On or about February 19, 1964, a representative of Robert J. Yeoman, d/b/a Yeoman Realty, called at the home of the Staffords to seek a listing of the ranch. The Listing Agreement was prepared by Yeoman's representative and was signed by the Staffords.

This Listing Agreement contained the statement: "Seller agrees to furnish an Abstract of Title, or Title Insurance showing marketable title to the property. (If property is leased, must be subject to transfer of lease to purchaser)".

Inserted below this printed provision, handwritten in ink, was the sentence: "Except No Side add. Approx 40 Ac & Barnes add approx 40 ac Q.C.D." (sic). We assume that the "Q.C.D." means that the Staffords planned only to give a quit claim deed to the property described. Obviously then both parties were aware of the fact that the Staffords did not own the entire ranch in fee simple.

On or about February 25, 1964, Robert J. Yeoman personally brought to the Staffords a Receipt and Agreement to Sell and Purchase. This agreement stated that the entire 750 acres would be covered by a merchantable title and would be conveyed by warranty deed "free and clear of all encumbrances". Th agreement also contained a provision stating that "broker assumes no responsibility in regard to the title * * *."

Mrs. Stafford pointed out this error to Yeoman, prior to her and her husband signing the agreement. Yeoman assured her that this could be taken care of in the final papers. The trial court found, and the evidence substantiates this finding, that Mrs. Stafford, being unfamiliar with legal technicalities, relied on this assurance.

On March 16, 1964, another Receipt and Agreement to Sell and Purchase was prepared by Yeoman. It contained exactly the same provisions and errors as the agreement of February 25th, discussed above. It differed only in upping the amount of the earnest money and decreasing the balance due. This agreement was signed personally by the Loves, but was signed

by one John W. Sutton of Yeoman Realty as agents for the Staffords, with the Stafford's name typed in.

Primarily because of the defective status of part of the title to the land, the Loves were unable to obtain financing for the purchase.

Before objecting to the sale because of the defects in the title and the easements, Loves had occupied certain parts of the property. Some damage was done by them to the land and the buildings thereon.

On or about July 7, 1964, respondent Mrs. Stafford consulted with attorney Art Jardine concerning the transaction. She was advised that she could not perform the terms of the March 16, 1964, agreement. Mr. Jardine related this same advice to Yeoman.

At two different times Mr. Jardine prepared a release agreement to be signed by the Loves calling for the return of the earnest money to the Loves minus a reasonable amount for rent and damages. Neither Robert Yeoman nor any of this agents ever tendered the earnest money to the Loves and the Loves' request for the return thereof was ignored.

There is evidence to the effect that the earnest money was never transmitted to the Staffords. There is also evidence to the effect, and the court so found, that Yeoman failed to deposit the money in a trust fund for the Staffords but placed the money in the company account.

On August 5, 1964, the Loves were still in possession of the property and Staffords filed their first complaint then for cancellation of the March 16, 1964, agreement, in which action Staffords tendered return of the $3,500.00 earnest money to the Loves, less reasonable rent. The Loves allowed their default to be entered in the action.

There being no return of the money to either the Staffords or Loves, the default of the Loves was set aside by stipulation on March 25, 1965. Loves obtained an order adding Yeoman and Westchester as additional parties defendant to the action.

At the conclusion of the trial the district judge made an order finding facts and conclusions of law. In his judgment he cancelled the contract, and awarded Stafford damages from the Loves. He also found Yeoman to be in violation of the Real Estate License Act of the State of Montana in his dealings with both the Staffords and the Loves, and awarded damages to both parties.

His judgment is as follows:

"IT IS ORDERED, ADJUDGED AND DECREED, and the Court does hereby order, adjudge and decree that plaintiffs and cross-complainants, Rolland M. Love and Marguerite B. Love, have judgment against defendant, Robert J. Yeoman, d/b/a Yeoman Realty, and Westchester Fire Insurance Company, a corporation, for the sum of $3,500.00 together with interest thereon from April 16, 1964, at the rate of 6% per annum, for treble damages in the sum of $10,500.00, and for $1,500.00 attorney fees for plaintiffs and $1,500.00 attorneys fees for cross-complainants and for cost and disbursements of plaintiffs and of cross-complainants Love; provided, however, that as to Westchester Fire Insurance Company the said judgment is limited to the sum of $10,000.00, and provided further that as to said $3,500.00 and interest, the cross-complainants Love are entitled to $3,050.00 thereof with interest at 6% per annum from April 16, 1964, and plaintiffs to $450.00 thereof with interest at the rate of 6% per annum from April 16, 1964, and the plaintiffs and the cross-complainants are entitled to equal shares in the balance remaining on said judgment after deducting the $3,500.00 and interest aforesaid and after deducting the attorney fees allowed to plaintiffs and cross-complainants, and the contract of sale between plaintiffs and cross-complainants and defendants Love be and the same is hereby cancelled, annulled and held for naught."

In their appeal to this court, appellants have presented numerous issues for our consideration. These deal with the findings of fact and conclusion of law of the trial judge and damages

awarded thereon. We will not discuss each issue individually as presented to this court for the reason that this would involve much needless repetition of the evidence and findings.

Basically three different actions were involved in the action in the district court. The first two of these concerned actions by the Staffords and the Loves against Yeoman and Westchester.

The first two of these actions were covered by the provisions of the Real Estate License Act of the State of Montana, Chapter 19, §§ 66-1924 and 66-1946, R.C.M.1947. We are here concerned especially with sections 66-1940 and 66-1937 of that Act.

The first of these sections allows a suit by "any person" against anyone covered by the provisions of the Act. Appellant Yeoman is so covered. This section also specifies damages which may be levied for violations of the Act, but this provision will be discussed more thoroughly later in our opinion.

The second of the two sections mentioned above specifies certain grounds upon which the license of a broker can be suspended or revoked. These sections are such that the violation of them would allow suit by "any person" against the individuals covered by the Act.

Subsections of § 66-1937, R.C.M.1947, pertinent to the case at hand, are as follows:

"(2) Making any false promises of a character likely to influence, persuade or induce;

"(3) Pursuing a continued and flagrant course of misrepresentation, or making false promises through agents or salesmen, or any medium of advertising, or otherwise;

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"(5) Failing to account for or to remit any money coming into his possession belonging to others."

The district judge ruled that as to Staffords, Yeoman had violated this Act by violating subsections 2 and 3 of § 66-1937. ■ Appellants argue that the court was in error in its Findings of Fact Nos. 6, 7, 9 and 13. These are the findings pertinent to the action of the Staffords against appellants.

It is unnecessary to quote each of these findings individually in that they relate to the same basic issue, and can be adequately summarized. The findings of the court were that the Staffords were aware of the fact that they could not give merchantable title to all the land involved; that they informed Yeoman of this fact; that Yeoman made misleading representations to the effect that marketable title could be given to the land, and that the Staffords, being unacquainted with legal terminology, relied up on these misrepresentations.

It seems that these findings are in fact true and supported by substantial evidence.

Plaintiff's Exhibit No. 2, the Real Estate Listing Agreement, specifically states that "an Abstract of Title, or Title Insurance showing marketable title", could not be given to approximately eighty acres of the land involved.

Yet Yeoman prepared an agreement saying that such marketable title would be delivered, after having assured the Staffords that such would not be done, and, along with the Loves, signed the sale agreement as agent of the Staffords. Certainly this constitutes misrepresentation as to them. Quite clearly Yeoman violated subsections (2) and (3) of section 66-1937, R.C.M.1947.

Yeoman makes two arguments as to why his acts did not constitute misrepresentations. The first is that even though the Staffords could not deliver a marketable title, the contract stated that as an alternative the seller could deliver "a title insurance policy insuring title thereto vested in Purchaser, free and clear of all liens and encumbrances". This argument ignores the fact that the Listing Agreement specifically stated such an insurance policy could not be given to part of the land, and thus limited Yeoman's authority to enter into any contract making the misprenetation that the Staffords could deliver such insurance.

Appellants further argue that no misrepresentation was involved as to the Staffords as it was not impossible for them

to deliver a marketable title to all the land involved. He supports this contention by citing various authorities as to what constitutes a marketable title. Assuming that a marketable title could be given to land not held in fee simple but only under a tax title, it is still without contradiction that the Staffords had not title whatsoever to some of the land involved. One cannot give a marketable title to land which one does not own.

Appellants' objections to the amount of damages awarded the Staffords will be discussed later.

The next question presented to the court is that of the responsibility of Yeoman in damages to the Loves.

The district judge found that as to the Loves, Yeoman was guilty of violation of all three of the subsections of § 66-1937, R.C.M.1947, quoted above.

As to the findings concerning misrepresentations to the Loves, appellants have objected to the court's Findings of Fact Nos. 14 and 5. The effect of these findings is that Yeoman induced the Loves to enter into the March 16, 1964, agreement, even though he knew they wanted a marketable title to all the land, and that this could not be delivered. As a result, the Loves took possession of a portion of the premises, did damage to the land under the assumption they would be the owners of it, and objected to the title after signing the agreement to buy.

We are unable to find these findings are not true and not supported by the evidence in the record. Whether or not the Loves objected to the title after the signing of the contract is irrelevant. It is clear that they desired a merchantable title to the property and signed an agreement which guaranteed them such a title.

As stated above, Yeoman obviously knew that such a title could not be given. His allowing the Loves to sign such an agreement constituted misrepresentation.

Appellant Yeoman also objected to the court's Finding

of Fact No. 11: That appellant deposited the earnest money in the business account instead of in a trust account in Stafford's name, as directed by the Loves. The testimony of Mr. Love indicates that he directed the money be placed in a trust account. Yeoman testified he though the money was so placed, but that in fact, it was placed in the company account.

Appellants have also objected to the court's Findings of Fact Nos. 10 and 16. The effect of these findings is: Yeoman never transmitted the earnest money to the Staffords; he did not heed the Loves' request for return of the money; and that he did not return the money, less rental value, after Staffords had obtained a default judgment in their action for the return of the money, less reasonable rental value, against the Loves.

We find all of the above findings to be substantiated by the evidence. These findings conclusively place Yeoman in violation of § 66-1937(5), R.C.M.1947. Appellants' objections to the amount of damages awarded the Loves will be discussed later.

In relation to the action by the Staffords against the Loves, appellants have objected to the court's Finding of Fact No. 19: "That the contract of sale between plaintiff and defendants, Rolland M. Love and Marguerite B. Love, dated March 16, 1964, be and the same is hereby cancelled."

Appellants contend that the March 16, 1964, agreement was an "Agreement to Sell and Purchase Real Estate" and as such must be distinguished from a contract of sale. They note that the Agreement to Sell and Purchase is a typical broker's employment contract and: "A real estate broker, under an ordinary contract of employment, has no implied authority to execute a contract of sale in behalf of his principal. Such authority must be specifically conferred upon him or necessarily implied from the terms of the particular contract or the particular circumstances." 12 Am. Jur.2d, Brokers, § 71, p. 824.

It is our conclusion that the Agreement to List constituted the employment contract, and expressly gave Yeoman the right to contract in the name of the Staffords, and specifically limited his authority to sell the land as described in that Listing Agreement. The Agreement to Sell and Purchase Real Estate constituted a contract for the sale of the land, and because it exceeded the authority given in the Listing Agreement, it was rightly cancelled.

The remainder of the issues presented by the appellants for the Court's consideration deals with the amount of damages which were awarded once the liabilities of the various parties had been established.

Section 66-1940(b), R.C.M. 1947, states: "In case any person in a civil action is found guilty of having received any money, or the equivalent thereof, as a fee, commission, compensation, or profit by or in consequence of a violation of any provision of this act, he shall in addition be liable to a penalty of not less than the amount of the sum of money so received and not more than three times the sum so received, as may be determined by the court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved."

Appellants' basic objection to the award of damages is:

The trial court in awarding the $3,500.00 damages to the Loves, plus triple damages, plus attorney's fees to both parties, plus interest, and then dividing the sum equally between the Staffords and the Loves, after deducting the award of $3,500 and attorney's fees, awarded each party an excess of the treble damages to which he was entitled.

According to this argument, the Loves received a judgment of $3,050.00 and the Staffords one of $450.00. Appellants argue that only these individual amounts should have been trebled in awarding damages plus attorneys' fees. In trebling the total sum and dividing it equally between the two parties, both parties received in excess of what the law provided them.

We cannot agree with this contention. The court specific-

ally stated that the judgment against appellants was being rendered in favor of the Loves. The disbursement of the total between the Loves and the Staffords had nothing to do with the action by the Loves against the appellants. Staffords have always maintained that the balance of the earnest money, minus reasonable rent and damages, should go to the Loves. The award of $450.00 to the respondents was a part of the action by the Staffords against the Loves and had nothing to do with the appellants.

Once it had been decided that the total judgment of $3,500, which appellants were assessed, went to the Loves, the allocation of the trebling of that amount between the Staffords and the Loves is not of appellant's concern. Neither of the parties between whom the money was allocated have presented to this court any objections as to the allocation of the judgment against appellants.

That there was an award of one judgment from appellants to the Loves, with that judgment to be disbursed between the Staffords and the Loves, is, we think, supported not only by the way in which the Staffords brought the action, but by the law on the subject of the payment of earnest money.

It is well settled that a prospective purchaser of lands is entitled to recover any earnest money deposited under a contract when the vendor is unable to provide merchantable title to the property covered by the agreement between the parties.

In the case of Woodbury v. Clermont, 236 F.2d 132 (9 Cir. 1956), the purchasers made an earnest money deposit on the sale and purchase of certain lands and the vendors then furnished abstracts of title that showed ownership of the property to be in the name of a third party. In that case, the U. S. District Court stated the universal rule in this regard, to wit:

"In an action to recover the deposit paid on an agreement for sale of realty where the abstract furnished showed that the

vendors had no title, purchasers were entitled to their deposit."

In effect the court was returning to the Loves which appellants held for them as agents of the vendors, and was not making two different awards from appellants to the Staffords and the Loves.

Appellants have also questioned the award of attorneys' fees to the Loves. Section 66-1940(c), R.C.M.1947, states: "Any person sustaining damages by failure of a real estate broker or real estate salesman to comply with the provisions of this act, shall have the right to commence an action * * *. In all cases where suit is brought against the broker or the salesman, and his surety, the court shall, upon entering judgment for the plaintiff, allow as a part of the costs of suit a reasonable amount as attorney's fees."

In respect to the cross-complaint by the Loves against Yeoman, they were in effect the plaintiffs in that action. A judgment was rendered in their favor and we see no reason not to allow them reasonable attorneys' fees.

There being no error in the findings of fact and conclusions of law of the lower court and the judgment rendered thereon, the judgment is hereby affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR, and JOHN CONWAY HARRISON, concur.