HOWARD LAPKE and MELVIN H. MAGNUSON, Plaintiffs and Respondents, *v.* DAVE HUNT and UNITED STATES FIDELITY and GUARANTY COMPANY, a Corporation, Defendants and Appellants.

No. 11420.
Decided June 12, 1968.
Rehearing Denied August 12, 1968.
443 P.2d 493.

Smith & Emmons, Robert J. Emmons (argued), Great Falls, for appellants.

Vance & Leaphart, Helena, Cure & Borer, Edward Borer (argued), Great Falls, for respondents.

PER CURIAM:

This is an appeal from a judgment entered in the District Court of Cascade County, the Honorable Paul G. Hatfield, presiding without a jury, in an action for the return of earnest money paid on a contract for the sale of land and interest on that money; for treble damages and attorney's fees, as provided for in the Real Estate License Act of 1963, §§ 66-1924 to 66-1946, R.C.M.1947, and for exemplary damages.

The suit in the district court was one by Harold Lapke, and Melvin M. Magnuson, hereinafter referred to as the respondents, against Dave Hunt and United States Fidelity & Guaranty Company. United States Fidelity & Guaranty Company, hereinafter referred to as appellant, was the surety on the bond required by the above mentioned Real Estate License Act for

Hunt to do business as a licensed realtor in the State of Montana.

The district court, based on its order finding facts and conclusions of law, entered a judgment against both defendants. Only United States Fidelity & Guaranty Company has appealed the judgment rendered against it.

The facts concerning the dealings between the respondents and Hunt, which resulted in the action against Hunt and the appellant in the district court, are as follows:

In the year 1964, Mr. Hunt was a licensed real estate broker. The surety on his bond was the appellant.

In September 1964, Mr. Hunt obtained an exclusive listing from Mr. and Mrs. J. H. Todd, of Lincoln, Montana, to sell their ranch. This ranch was commonly known as the Seven-Up Ranch.

On December 29, 1964, the respondents signed a "Receipt and Agreement to Sell and Purchase" the Todd's Ranch. Mr. Lapke gave Mr. Hunt his check for $2,500.00 as earnest money for the purchase on the same day. This offer was to expire five days after the date of signing. It was not accepted by the Todds within that period.

On January 4, 1965, respondents executed a new "Receipt and Agreement to Sell and Purchase" for the same property. This offer was to remain open for thirty days. This offer called for the payment of $5,000.00 as earnest money. Accordingly Mr. Lapke issued a second check for $2,500.00, which, along with the first check, was to constitute the required earnest money. This second agreement was also not accepted by the Todds.

The record indicates that Hunt made other attempts to effectuate a deal between the respondents and the Todds. All of these attempts were unsuccessful. The record also indicates Hunt made assurances to the respondents that all they would have to do was remain patient, and something could be arranged.

On January 4, 1965, Hunt had Mr. Lapke's check of December 29, 1964, for $2,500.00 in his possession at Poplar, Montana. Hunt endorsed this check and obtained a bank draft on the Great Falls National Bank, issued by the Trader's State Bank of Poplar, for $2,500.00, made payable to Mr. Hunt. This cashier's check was paid on January 29, 1965, to Mr. Hunt.

On January 7, 1965, Mr. Lapke's check of January 4, 1965, was endorsed by Mr. Hunt and deposited to the account of his wife, Lillian Hunt, at the Montana Bank, Great Falls, Montana.

Respondents became impatient with the dealings for the Seven-Up Ranch. On April 10, 1965, they met Mr. Hunt at his home in Great Falls, and demanded the return of the earnest money and a mortgage given by Magnuson's mother, which mortgage was to constitute part of the down payment on the ranch. The mortgage was returned, but Hunt stated that he did not have the $5,000.00 to return as he had already spent it. The earnest money was never returned and as a result action against Hunt and the appellant was begun for its return.

The facts of the dealings between Mr. Hunt and the appellant which resulted in the appeal to this Court from the judgment of the district court, are as follows:

Mr. Hunt was first issued a bond by the appellant in the year 1963, which bond was continued for the year 1964.

However, the 1963 Session of the Montana Legislature passed the Real Estate License Act of 1963. That Act made it a misdemeanor to act as a realtor in the State of Montana without a license. It further provided: That all licenses for realtors would be issued from January 1 of each year to December 31 of the same year; that all license applications must be accompanied by a bond in the amount of ten thousand dollars; and that all applications for licenses must be received before January 1, of the year for which they were to be issued.

On November 2, 1964, appellant sent a letter to its local

agent in Great Falls, McNair and Roberts, giving notice that real estate licenses and bonds would have to be renewed by January 1st of the next year. Enclosed with the letter was the bond which was to be countersigned by the applicant and transmitted, along with the license application and license fee and premium on the bond, to appellant's office in Helena. Appellant would then transmit it to the Real Estate Commission. The letter listed Mr. Hunt as one of those whose license and bond would have to be renewed.

On December 20, 1964, Mr. Hunt went to McNair and Roberts' office, signed his application for a real estate license, countersigned the bond, and paid the license application fee plus the premium on the bond.

Solely because of the error of the local agents of the appellant, the requisite papers were not sent to the appellant's office until after the January 1st, deadline. Appellant did, however, countersign the bond and transmit the requisite papers to the Real Estate Commission on January 7, 1965. On January 8, 1965, because of the lateness of the receipt of the application and the bond, Mr. Hunt was denied his real estate license for the year 1965.

Appellant and McNair and Roberts made several attempts to get the commission to reconsider its decision, all of which attempts failed. It appears that Mr. Hunt was tentatively advised of the situation as early as January 15, 1965, but was not finally advised of the denial of his application until February 15, 1965. Not until March 16, 1965, did the appellant return the premium paid on the bond, and then it only returned it to its local agent. It took no steps to formally revoke the bond as provided in the agreement itself.

The court below found in favor of the plaintiffs as against the defendant Hunt, for the sum of $5,000.00, the earnest money down payment which Mr. Hunt converted, trebled as provided by section 66-1940, R.C.M.1947, together with interest at the rate of six (6) percent per annum from April 10, 1965,

the date of demand of the earnest money, and $2,000.00 attorney's fees. Judgment was entered against Dave Hunt for the total sum of $17,677.09, together with interest from the date of judgment and costs. Judgment was entered against United States Fidelity & Guaranty Company for $10,000.00, the limit of the bond, together with interest at the rate of 6 percent per annum from October 6, 1965, the date of filing of the complaint, plus the date of filing of the complaint, plus costs.

No appeal has been taken by Dave Hunt from the judgment rendered against him, and United States Fidelity & Guaranty Company in its brief has conceded that Mr. Hunt had no right to retain the $5,000.00 earnest money and that he misappropriated that sum, an act which constituted a violation of section 66-1937(5), R.C.M.1947.

Appellant has, however, raised several other objections to the findings of fact and conclusions of law of the trial court. We will not discuss each of these issues individually, in that many of them relate to the same subject and can be discussed together.

The issues presented by the appellant in his Statement of Issues I, II, III, IV, V, VI, and VII, all relate to the subject of whether the appellant was liable as surety for any bond issued on Mr. Hunt by the appellant.

We agree with the appellant's contention that there is no liability on its part under the bond issued for the period of January 1, 1964 to December 31, 1964, for the simple reason that no violation of the Real Estate License Act of 1963 took place during that year. The misappropriation which did occur took place during the year of 1965, and under ordinary contract law appellant's liability on the 1964 bond cannot be extended past the time specified for its expiration in the instrument itself.

We also agree with the appellant's contention that as between it and Mr. Hunt, there was no bond for the year 1965. A condition precedent to that bond going into effect, the

issuance to Mr. Hunt of a license to act as a real estate broker, had not been met. Again, under the rules of contract law, the failure to meet this condition precedent meant that the contract never did go into effect.

We conclude, however, that as between it and innocent third parties who did not know about the dealings between Hunt and United States Fidelity & Guaranty Company, the appellant in this case is estopped from asserting that defense and is liable on the 1965 bond. We base this conclusion upon several grounds.

One of these grounds is contained in section 49-109, R.C.M. 1947, which states: "No one can take advantage of his own wrong."

The whole record here indicates the only reason the license was denied was that the appellant, because of the fault of its local agent, was tardy in transmitting the papers before the deadline. There was no fault upon the part of Hunt in his failure to receive a license.

Hunt had advised the respondents in 1964 that he was a licensed realtor. There was no reason for them to believe that this same situation did not exist in 1965. Indeed, Hunt himself was not finally apprised of the fact that his license had not been issued until after the misappropriation had actually taken place. To allow appellant to escape liability to the respondents because of its own negligence would be an extreme case of allowing one to take advantage of his own wrong.

Another basis upon which we find the appellant liable to the respondents is found in section 49-113, R.C.M.1947, which states: "He who takes the benefit must bear the burden."

Again, the record is clear that Mr. Hunt paid the license application fee and the premium upon the bond. The account of McNair and Roberts was debited by United States Fidelity & Guaranty Company in the amount of the premium paid to McNair and Roberts. Not until March of 1965 was the premium returned by the appellant, and then it was only returned to

its local agent. This was after many of the transactions which resulted in the suit had taken place. We might assume that if this controversy had not arisen, the premium might not have been returned at all. In any case, appellant certainly accepted the benefits which accrued to it under the bonding contract, and so, as to innocent third parties, it must bear the burden.

Section 49-113, R.C.M.1947, is particularly relevant to the case at hand because of a case, involving the same appellant, which was decided under it. That case is Doheny v. United States Fidelity & Guaranty Company, D.C., 34 F.Supp. 888; United States Fidelity & Guaranty Co. v. Doheny, 9 Cir., 123 F.2d 746. The appellant in that case had issued a performance bond on a contractor who had a contract with the State of Montana to build bridges. The contract required that the bond would insure that the contractor would perform all obligations placed upon him by the contract. One of those obligations was that the contractor carry liability insurance, "to indemnify the public for injuries or damages sustained by reason of the carrying on the work." 123 F.2d 746, 748.

The appellant took it upon itself to issue the insurance, but limited it to accidents occurring near the construction sites.

The accident which resulted in the suit occurred about twelve miles from the bridge which the contractor was building. The accident was due, however, to the negligence of the contractor's employees. The court ruled that the appellant was liable under the policy of insurance even though it had a limitation provision in it. The court reasoned that in its bond, appellant had agreed to insure performance by the contractor of all obligations of the contract, including the one to provide insurance indemnifying the public for injuries sustained by reason of the construction. Appellant could not accept the benefits under the bond, yet attempt to limit its liabilities under that bond from those stated in the contract.

Of course that case did not involve a situation such as we

have in the case at hand, namely, whether the bond was even in effect.

The interesting aspect of that case, and the one pertinent to the case at hand, is the comment of the court upon the purpose of the bonding requirement. The court said that the purpose of such bonds, "* * * was intended for the protection of the general public, not for the safeguarding of the state in its capacity as a party to the contract. Aside from its immunity from suit, the state, as a party had no legal responsibility for damages suffered as a result of the negligence of an independent contractor." The court reasoned that the bonding requirement "* * * was intended for the protection of the general public, not for the safeguarding of the state * * *."

We think that the same comments can be made on the bonding requirement of the Real Estate License Act of 1963. The bond required by that Act is not for the benefit of the state, but for the benefit of people dealing with realtors who may be both irresponsible and insolvent.

The court in United States Fidelity & Guaranty Co. v. Doheny, supra, went on to say that to allow the appellant to be liable for less than it guaranteed in the bond would "virtually amount to the sanctioning or encouragement of frauds upon the state, and through the state upon its people and others within its borders."

We think the same comments can be made upon the case at hand. Respondents felt that they were dealing with a licensed realtor. They had no indication that the situation had changed in the year 1965. To allow appellant to accept the benefits under the bond, yet disclaim liability because of a technicality and a fault in the transactions between it and its agent, would virtually amount to the sanctioning of a fraud on those dealing with persons whom they have every right to assume to be licensed realtors.

The third basis upon which we rest our conclusion that the

appellant is liable to the respondents is section 49-135, R.C.M. 1947, which states: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

In this case, neither the appellant nor the respondents were responsible for the misappropriation by Hunt of the earnest money. However without their recourse to the surety, the respondents are virtually without a remedy. The surety is subrogated to the rights of the respondents against Hunt. This remedy might be valueless also, but the appellant assumed such a burden when it went into the business of issuing bonds. Both parties are innocent of wrongdoing but it was appellant's *negligence* which left Mr. Hunt without a bond to cover his liability, the business which the appellant was in, and therefore it should be the one to suffer.

Appellant's second major objection is as to the amount of interest awarded in the judgment against it. Appellant contends that since its liability was not known until the time of the judgment, it could not be charged interest from the time of the filing of the complaint. Appellant bases its position on section 17-204, R.C.M.1947, which states: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

Appellant contends that since the damages due were not certain until the time of the filing of the judgment, it cannot be charged with interest from the time of the filing of the complaint.

It is well established rule relating to the law on the payment of earnest money that the broker is acting as agent for the vendor. If the sale is completed, the money must be turned over to the vendor. If the sale is not completed, the

money must be returned to the vendee. Stafford v. Love (151 Mont. 270), 442 P.2d 190.

A demand for the return of the money was made against Hunt, on April 10, 1965. He became liable for the return of that money from that date. As a general rule, the liability of the surety also commences at this time but, as here, where no demand on the surety was made until the filing of the complaint, the surety's liability did not begin until the filing date. 17 A.L.R.2d, § 20, 1015, at p. 1035.

As a result, the respondents were due damages from a certain date, and the amount of damages was certain or at least capable of being made certain. Therefore the requirements of section 17-204, R.C.M.1947, were met, and the award of interest was proper.

Appellant's next contention is that the award of damages plus interest exceeded the face value of the liability under the bond. Appellant contends that its liability extends only to the face value of the bond.

We hold that in an action against a surety company upon a bond issued by that company, interest may be awarded even if that interest, in addition to the amount of damages awarded, exceeds the amount of liability stated in the bond. 12 Am.Jur.2d, Bonds, § 45, p. 508; 11 C.J.S. Bonds § 132(b), p. 511.

Our decision on this point, besides being supported by the general weight of authority upon the subject, is supported by the decision of this Court in Mitchell v. Banking Corp. of Montana, 94 Mont. 165, 22 P. 2d 175, which, although it does not deal directly with the situation under consideration here, can be analogized to it.

That case involved a suit by creditors of an insolvent bank against the stockholders of that bank. The liability of the stockholders was limited by law to the amount of the par value of the stock held by each stockholder. A court order was entered so fixing the liability of the stockholders. In a

subsequent action against the stockholders, damages in the amount of the par value of the stock held by each stockholder were awarded but onto this amount was tacked an additional amount representing the interest accrued since the original court order determining the amount of liability. This Court affirmed that holding stating: "But when that liability is fixed within the limits of the statute, it draws interest the same as any other demand until paid * * * The interest comes in the nature of a penalty for delay in the prompt payment of the statutory liability on demand." Mitchell v. Banking Corp. of Montana, supra, p. 179.

We feel that the same rationale can be applied when the limit of the liability is fixed not by statute, but by a bond. The interest represents both interest, which might have accrued to the person to whom payment should have been made, and an additional penalty for failure to pay money when the right to payment had vested.

 Appellant's last contention is that since Melvin Magnuson made no payments as earnest money, he should have been dismissed as not being a real party in interest.

The record indicates that only after the commencement of the action was an arrangement made so that Magnuson no longer had an interest in the outcome of the case.

We are mindful of Rule 17A, Montana Rules of Civil Procedure, which requires that every action be prosecuted in the name of the real party in interest.

We are, however, further mindful of section 93-2824, R.C.M. 1947, which provides in part as follows:

"* * * In case of any transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

The district judge was left with the discretion as to what to do. The controlling factor should be the protection of the

462

debtor from double liability. In the instant case, appellant was adequately protected against double liability and its interest was in no way harmed by the presence of Magnuson as a party plaintiff to this suit. Consequently the trial judge was not in error in denying appellant's motion to dismiss Magnuson as a real party in interest.

In accordance with the findings of this Court, that the findings of fact of the lower court were substantiated by the evidence, and the conclusions of law and relief granted were in accordance with the law, the judgment of the lower court is affirmed.