R. A. "Dick" MADER, Appellant (Defendant
and Third-Party Plaintiff below),

v.

Michael D. JAMES, a/k/a Mick James
(Third-Party Defendant below),

v.

Joel R. FANNING, a/k/a Dick Fanning,
Appellee (Plaintiff below).

Michael D. JAMES, a/k/a Mick James, Ap-
pellant (Third-Party Defendant below),

v.

R. A. "Dick" MADER (Defendant and Third-
Party Plaintiff below),

v.

Joel R. FANNING, a/k/a Dick Fanning,
Appellee (Plaintiff below).

Joel R. FANNING, a/k/a Dick Fanning,
Appellant (Plaintiff below),

v.

R. A. "Dick" MADER, Appellee (Defendant
and Third-Party Plaintiff below),

v.

Michael D. JAMES, a/k/a Mick James, Ap-
pellee (Third-Party Defendant below).

Nos. 4517, 4519 and 4537.

Supreme Court of Wyoming.

Feb. 12, 1976.

Rehearing Denied March 10, 1976.

Cecil K. Hughes, Sundance, signed the briefs and appeared in oral argument on behalf of the appellant-appellee, Joel R. Fanning a/k/a Dick Fanning.

Bruce P. Badley and Micheal K. Shoumaker, Badley & Shoumaker, Sheridan, signed the briefs and Micheal K. Shoumaker appeared in oral argument for the appellant-appellee, R. A. "Dick" Mader.

Thomas Lubnau, Gillette, signed the briefs and appeared in oral argument on behalf of the appellant-appellee, Michael D. James, a/k/a Mick James.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

James, appellant and third-party defendant, owned a ranch which he listed for sale with realtor Mader, appellant-defendant and third-party plaintifff. Mader found a buyer, Fanning, cross-appellant plaintiff.

Fanning paid a $15,000.00 deposit on a sale price of $275,400.00 to Mader "as part payment to be held by Agent pending exchange of final papers." The purchase offer, acceptance and receipt, of which the just-quoted words were a part, went on to provide:

"In event of Buyer's failure to seasonably complete the terms and conditions of this offer, the Buyer agrees that the Seller may elect to either retain the deposit made herewith as fixed and liquidated damages for Buyer's failure to complete the sale as herein provided, or enforce specific performance of this Agreement. Time is of the essence of this Agreement."

The agreement also specified that:

"Undersigned SELLER accepts the foregoing offer this 22 day of August, 1973, and has been advised of and will pay to Agent commission as proposed by Schedule of WYOMING REAL ESTATE BOARD, and that in event sale is not completed by Buyer's failure or refusal to do so and Seller elects to accept the deposit made herewith, as above provided, as fixed and liquidated damages, that such deposit, but not exceeding regular commission, shall be divided equally between the Seller and Agent.

"Witness/s/ R. A. Dick Mader /s/ Michael D. James
 Seller"

---

The sale fell through. The trial court held that the seller was at fault and gave judgment in favor of Fanning against Mader for $15,000.00, without interest, the amount of the deposit, and in favor of Mader against James for $7,500.00, one-half of the deposit, without interest. The issues on this appeal will be developed as we move along.

As repeatedly is our practice, we must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. *Tavares v. Horstman*, Wyo.1975, 542 P.2d 1275, 1277, and references there footnoted. The evidence was in conflict as to whether James or Fanning caused contract failure. Taking the view most favorable to Fanning, we see that on the date set for closing, James got into a squabble with his former wife over what he expected would be a $35,000.00 settlement with her $50,000.00 divorce claim. He walked away from the closing after a colloquy with Fanning, as shown by the following testimony:

"A Mick James said, 'That God dam [sic] ex-wife of mine. Don't ever get involved in a business deal where you have to rely on any help from an ex-wife.'

"And I said, 'What's the problem?'

"And he said, 'I have a letter stating she will settle for thirty-five thousand, and now she wants fifteen thousand.'

"Q Fifteen thousand?

"A An additional fifteen thousand.

"Q All right.

"A 'She wants her full fifty thousand, and unless you can come up with fifteen thousand or I can talk her down to thirty-five thousand as her letter agrees, why, the deal is off.' "

Fanning appeared at the closing ready and prepared to perform. James thereafter made no serious effort to perform according to the terms of the contract, and sold his ranch to another. Fanning bought another ranch, relying upon the conduct and words of James as a revocation.

■ That being the case, the most that exists is a revocation of the contract by the seller and the least these facts represent is a mutual rescission of the contract of sale. No one argues that James can appropriate the $15,000.00 to the use of himself and his agent when he alone is the sole cause of contract breach; the result would be so patently unjust. The rule is that the depositor of earnest money with a real estate broker is entitled to recover the full amount of the deposit if it is shown that the conveyance failed either because of the seller's breach or because of mutual rescission. *Cline v. Colorado Real Estate Commission*, Colo.App.1973, 513 P.2d 1072; *Schroeder v. Krushevski*, La.App.1966, 186 So.2d 640; *Eckhoff v. Morgan*, 1964, 64 Wash.2d 851, 394 P.2d 898; *Perino v. Jarvis*, 1957, 135 Colo. 393, 312 P.2d 108.

■ As said in *Lapke v. Hunt*, 1968, 151 Mont. 450, 443 P.2d 493, 498, the barebones rule, without reference to contract terms and exceptions, is:

> "It is a well established rule relating to the law on the payment of earnest money that the broker is acting as agent for the vendor. If the sale is completed, the money must be turned over to the vendor. If the sale is not completed, the money must be returned to the vendee. * * *"

In *Stafford v. Love*, 1968, 151 Mont. 270, 442 P.2d 190, it was held that the rule has some basis in and is related to a statute regulating real estate brokers where by § 66–1937(5), Revised Codes of Montana, 1947, it is declared an improper practice in "Failing to account for or to remit any money coming into his possession belonging to others."

Section 33–355.11(e), W.S.1957, 1975 Cum.Supp., Laws, 1971, Ch. 251, § 11, similarly provides it to be a violation of the Real Estate License Act of 1971, for "Failing within a reasonable time to account for or remit any monies coming into his possession which belong to others, commingling funds of others with his own or failing to keep such funds of others in an escrow or trustee account, * * *." Impeccable handling of such accounts is required in this regulated business. It is not inferred that Mader mishandled the account, in the light of the dispute between buyer and the seller and he, in fact, told Fanning, "There is no way that I can refund your money in absence of a written agreement between you and Mr. James, because that's not my money." He may have been mistaken about the necessity of a written agreement but the statement was expressive of the fiduciary position he had and recognized.

In *Medak v. DePrez*, 1963, 236 Or. 31, 386 P.2d 805, it was held that the purchaser is entitled to return of the deposit if the sale fails through no fault of his and earnest money is, in effect, held by the broker as an escrow for both parties, interpreting an Oregon real estate rule like § 33–355.-11(e).

■ Where a party to a contract (like James) has prevented performance by the plaintiff, it is not necessary for the plaintiff to prove his own readiness and ability to perform. *Sturgeon v. Phifer*, Wyo.1964, 390 P.2d 727, 730. There is no violation of the statute of frauds involved. A written contract for the sale, while still executory, may be rescinded by an oral agreement or by acts and conduct constituting abandonment of the written bargain. Such a rescission requires a restoration to status quo, so far as possible. *Gaido v. Tysdal*, 1951, 68 Wyo. 490, 235 P.2d 741. There is no lack of evidence that the parties treated the contract at an end. In order to restore the parties to their status before the contract of sale, Fanning is entitled to a repayment of his $15,000.00 deposit, but by whom?

■ The question brings the case to that issue. The deposit was paid to Mader. He held it. None of the fund was paid in cash to James but James was given credit for $7,500.00 by Mader on the subsequent sale of the ranch, they having taken the position that Fanning, as the buyer, was the defaulting party. As we conceive the

evidence to be in the light most favorable to the prevailing party, there is no question but what plaintiff, as an innocent party, is entitled to at least $7,500.00 from Mader. But what about the other $7,500.00 credited to James? He never parted with that but kept it as a credit to James on account of his second sale of the ranch, under his interpretation of the agreement with James and the facts as he saw them. Since it was the failure of James, the seller, to perform that resulted in a rescission, the real issue at this particular point in this opinion revolves around the $7,500.00 credited to the account of James. Generally, an agent to whom money is paid for his principal under circumstances that would entitle the payer to recover it back from the principal is individually liable to the payer so long as it remains in his hands and he has not changed his position. *Pixton v. Silva*, 1975, 13 Wash.App. 205, 534 P.2d 135; *Andersen v. Burns*, 1974, 96 Idaho 336, 528 P.2d. 680; *Rhodes v. Tomlin*, 1958, 267 Ala. 491, 102 So.2d 904; *Gust v. Wilson*, 1953, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371. The fact that the agent credits the principal with the amount received does not release the agent from his obligation to make restitution so long as he continues to hold the money on behalf of the principal. *Weiner v. Roof*, 1942, 19 Cal.2d 748, 122 P.2d 896. This is what Mader did.

In *Hicks v. Howell*, 1961, 203 Va. 32, 121 S.E.2d 757, it was said that since the seller was unable to perform, the seller never became entitled to the deposit. Consequently, the broker had no right to apply the funds to the payment of a debt, owed by the seller to the broker and the deposit should be returned in equity and good conscience.

A recovery back of money paid to a disclosed and innocent agent ordinarily is not permitted where the money has been paid over by the agent to his principal in good faith without notice that the principal is not entitled to the money. *Kost v. Peterson*, 1971, 292 Minn. 46, 193 N.W.2d 291; *United States v. Cambridge Trust Co.*, 1 Cir. 1962, 300 F.2d 76; *United States v. Bethke*, D.C.Colo.1955, 132 F.Supp. 22, 26, and cases there cited; Annotation, 82 A.L.R. 307. Section 17, Restatement of the Law of Restitution, p. 76, states:

> "A person who has paid money to another in the performance of an agreement with a third person is entitled to restitution from the other if, because of fraud or mistake, the agreement or transfer was ineffective or was voidable and has been avoided, unless the other gave value therefor or changed his position, without notice of the cause of avoidance."

In *Lapke v. Hunt*, supra, it was held that there is a liability for the return of earnest money created on the date the purchaser makes demand for its return.

▇ We have now arrived at the notice requirement as the touchstone. Mader was first notified of Fanning's claim for refund on October 3, 1973, and repeatedly thereafter. He did not credit James until November, 1973. We hold that Mader's liability to Fanning for the full amount of the $15,000.00 deposit became fixed on October 3, 1973, and the subsequent credit to James was a nullity. Mader is charged with knowledge, after notice, and should have realized that any payment of funds to James must be at his own risk, until settled. This has the effect of wiping off the slate the credit Mader gave to James.

Mader, in his third-party complaint against James, prayed for indemnity for "any and all amounts for which Mader may be found liable to Fanning." The trial judge gave Mader judgment against James for $7,500.00. This indemnifies Mader for the $7,500.00 credit Mader gave James on his realtor's commission for a subsequent sale of the ranch.

For the first time, on this appeal, Mader raises the claim that he is entitled to a realtor's fee for finding Fanning, a ready, willing and able buyer, and obtaining his signature on a contract of sale. At no time, as far as shown by the record, was

any fee claimed in this action for his services in connection with the Fanning contract. None of the pretrial memoranda of any of the parties sets out the matter of a realtor's commission as an issue, nor does the trial court's pretrial order. There is no evidence of any amount claimed as a commission or fee.[1]

 Mader's sole position in the case was directed toward Fanning's default and the freedom from fault of James other than indemnification from James, if his first position should fail. Nowhere do we find that the trial judge was ever presented with Mader's claim for a commission nor was Mader's complaint against James ever amended to include that claim. A question not raised in the trial court cannot be considered by the supreme court. *Guggenmos v. Tom Searl-Frank McCue, Inc.*, Wyo.1971, 481 P.2d 48, 51; *Gaido v. Tysdal*, supra. See also the multitude of cases cited in West's Wyoming Digest, Appeal and Error, ☞169.

 It may well be that Mader is entitled to a realtor's fee as a result of the contract he arranged between Fanning and James. We do not hold that he is or is not entitled to a realtor's fee. We only hold that the claim was neither made nor tried in the district court and is therefore an improper issue in this appeal. We have not been informed of any impediment to the filing of a separate suit to recover a realtor's fee.

 Mader is entitled to be indemnified by James for the credit of $7,500.00 allowed on the subsequent sale of the ranch. There is no evidence to indicate that it was through Mader's fault that James created a rescission of the contract of sale obtained by Mader. As far as the record shows, Mader was completely innocent. Normally, upon an agent becoming personally liable for the performance of a contract which he has entered into for his principal, he may hold the principal for indemnity for damages the agent sustains because of a breach of that contract. *Sunset-Sternau Food Co. v. Bonzi*, 1964, 60 Cal.2d 834, 36 Cal.Rptr. 741, 389 P.2d 133. A principal is under a duty to indemnify the agent where the agent suffers a loss which because of their relation, it is fair that the principal should bear. Restatement, Agency, Second, § 438(2)(b), p. 322, and § 439, p. 329. It would be inequitable for indemnity not to be made, because Mader gave credit to James on an obligation owed by James to Mader. Mader has additionally made every effort through a vigorous defense to sustain James' position in this case that the default was by the buyer and not the seller. Mader is entitled to be indemnified by James for the $7,500.-00 credit given, together with interest thereon, to run from the date in November, 1973, James was allowed the credit.

There remains only the question of interest which Fanning claims should have been a part of the judgment in his favor. The only pertinent statute is § 13-477, W.S.1957, 1975 Cum.Supp., Laws, 1971, Ch. 191, § 9-103:

"If there is no agreement or provision of law for a different rate, the interest of [sic] money shall be at the rate of seven percent per annum."

 Interest is recoverable on liquidated but not on unliquidated claims. A liquidated claim is one readily computable by simple mathematical computation.

---

1. There is nothing in the record to fix any money amount as to what the realtor's fee should be though it seems capable of proof. The contract makes reference to a schedule of the Wyoming Real Estate Board but no schedule is in evidence. We do not know whether that refers to the state agency which was formerly known as the Wyoming Real Estate Board (§ 33-345, W.S.1957, before repeal by Laws, 1971, Ch. 251, § 19), now known as the Wyoming Real Estate Commission (§ 33-355.5, W.S.1957, 1975 Cum.Supp., Laws, 1971, Ch. 251, § 5) or a private organization of realtors. If it refers to the state agency, we know of no authority of that body to propose, fix or approve realtor's fees. We only question the matter; we make no ruling in that regard. There is no evidence from which a realtor's fee can be ascertained or computed.

*United Pacific Insurance Co. v. Martin and Luther General Contractors, Inc.,* Wyo.1969, 455 P.2d 664, 677. Not even the simplest arithmetic is here necessary. The amount of Fanning's claim was a sum certain—an amount stated. It became due on the date that Fanning accepted James' rescission of the contract. The record shows the first demand for the refund to have been made on October 3, 1973, and to have been made repeatedly thereafter. Fanning is entitled to interest at the rate of seven percent per annum from that date to judgment and at the judgment rate of ten percent thereafter. Section 1–308.1, W.S. 1957, 1975 Cum.Supp., Laws, 1973, Ch. 207, § 1, provides as follows:

"(a) Except as provided in subsection (b) of this section, all decrees and judgments for the payment of money shall bear interest at 10% per year from the date of rendition until paid.

"(b) If the decree or judgment is founded on a contract, and all parties to the contract agreed to interest at a rate less than 10% per year, the rate of interest on the decree or judgment shall correspond to the terms of the contract."

Affirmed except as to interest and remanded with instructions to enter a corrected judgment in conformity with this opinion.