No. 13873

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

RAY TWITE and JACK TWITE,

        Plaintiffs and Appellants,

-vs-

WESTERN SURETY COMPANY, a corporation,

        Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

    For Appellants:

        Tipp, Hoven and Skjelset, Missoula, Montana
        Vernon Hoven argued, Missoula, Montana

    For Respondent:

        Garlington, Lohn and Robinson, Missoula, Montana
        Gary Graham argued, Missoula, Montana

---

Submitted: January 19, 1978
Decided: APR 12 1978

Filed: APR 12 1978

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Two separate actions were filed by plaintiffs Ray and Jack Twite against James Lackman, David Gregoryk and Lackman Realty in the District Court, Missoula County. Counsel for the respective parties stipulated the two causes of action with Ray Twite and Jack Twite as plaintiffs could be consolidated and deemed submitted to the trial court upon the filing of briefs. David Gregoryk was served in that action on March 15, 1974, but did not appear. A default judgment was taken against him on April 29, 1974. After jury trial the remaining defendants were found to be not liable.

Subsequently, Jack and Ray Twite filed actions against Western Surety Company (Western) on Gregoryk's bond. The actions were consolidated and submitted to the trial court on agreed facts. Judgment was rendered in favor of Western and Twites now appeal from the final judgment.

In the complaint of the underlying action, plaintiffs based their suit on the fact David Gregoryk was a licensed real estate salesman under the Real Estate Licensing Act of 1963. The cause presently before this Court was filed against Western Surety Company as surety for Gregoryk under section 66-1933, R.C.M. 1947, of the Real Estate Licensing Act. The bond required that Western would be bound to the Montana Real Estate Commission in the sum of $10,000 conditioned upon the payment by Gregoryk of judgment recovered against him for loss or damage to any individual arising in the course of Gregoryk's practice as a licensed real estate salesman.

Each plaintiff entered into a written contract to purchase land located in the Garnet Range area of Powell County. Title to this land was in Gregoryk and his wife by virtue of a contract for deed. At the time that plaintiffs signed the sales contracts, the Gregoryks were in default under their contract for deed. The contracts signed by plaintiffs were commonly used forms in the real estate business in Montana. The form contract makes a number of references to real estate brokers and agents, but Gregoryk signed these contracts as seller rather than as an agent or broker. These contracts were signed at Lackman Realty, where Gregoryk worked as a salesman. It also appears that Lackman Realty was selling similar lots in the same area.

The trial court made findings in agreement with the stipulated facts, and further found:

> "5. That at all times pertinent hereto David Gregoryk was the owner of the real estate which was sold to and purchased by the Plaintiffs.
>
> "6. That all acts of David Gregoryk were accomplished as owner of the real property in question."

Upon these findings the District Court concluded, as a matter of law:

> "1. That David Gregoryk in all of his relationships with JACK TWITE and RAY TWITE was acting as the owner of the property in question and not as a licensed real estate salesman.
>
> "2. That the Defendant is not liable under said bond for the acts of David Gregoryk since the actions complained of were acts accomplished by the owner of the property and not within the course of Gregoryk's business as a real estate salesman."

The issues on appeal are:

1. Whether or not under the Montana Real Estate Licensing Act the real estate agent Gregoryk, in selling his own property, can be covered on the real estate bond provided by Western?

2. Whether attorney fees and interest can be recovered in addition to the full amount of the bond?

We find the major problem in this case is the misapplication of the Real Estate License Act. Section 66-1924, R.C.M. 1947, simply requires anyone dealing directly or indirectly in the real estate business buy a broker or salesman license. This means the person so engaged must comply with sections 66-1929 through 66-1935, R.C.M. 1947, which set forth the educational, professional, and monetary requirements to obtain the license required for the job or position to be held by the person dealing in real estate.

The Act, further, in section 66-1937, R.C.M. 1947, entitled "Grounds for refusal - suspension or revocation of license", sets out the ethical standards to be observed by a licensee under this Act. There is no provision in the Act that relaxes the ethical standards for a licensee who happens to be selling property titled or contracted to the licensee. The contrary is demonstrated under section 66-1937(7), which prohibits acting in dual capacity as a broker and undisclosed principal in a transaction. This is the sum total of our concern, given the agreed facts in this case.

Section 66-1926 - "Exempted classes", has nothing to do with the problem presented by the agreed facts of this case and its insertion into this case is error.

Section 66-1926 merely enumerates the persons who may be associated with a real estate transaction, yet are not in the real estate business and therefore are "exempted" from purchasing a real estate license, i.e., an individual selling his own home, an attorney acting for a client, an attorney-in-fact, auctioneers and many others. The fact that a person can sell his own property

- 4 -

without being in violation of the Real Estate Act, for failure to purchase a real estate license, does not lend itself to the proposition that a licensed real estate salesman is relieved of his responsibility under section 66-1937, merely because he has taken property into his name before defrauding a purchaser. This would render the Act a nullity. Furthermore, it will stand without discussion that this kind of arrangement would be strictly against public policy,which is to protect the public from unscrupulous and insolvent real estate agents and brokers.

A number of jurisdictions have ruled on this matter in conjunction with a statutory exemption when dealing in a person's own property. We are concerned only to the extent that they demonstrate the surety's liability in cases involving the sale of a licensee's property.

The rule of these jurisdictions may be synthesized in this manner:

> Members of the public have the right to rely upon express or implied representations of a licensed real estate agent or broker although the agent is in fact the owner of the property being sold. Therefore, the surety is bound by such express or implied representations and the bond shall cover such judgments entered.

See: Goody v. Maryland Casualty Co., (1933), 53 Idaho 523, 25 P.2d 1045; Mapes v. Foster, (1928), 38 Wyo. 244, 266 P. 109.

Plaintiffs here contend they were led to believe they were dealing with a reputable real estate broker agent in the purchase of the land. Plaintiffs point to these external factors which led them to believe that defendant was selling this land as a broker:

1) The real estate agent (Gregoryk) never informed plaintiffs he was acting as owner of the land, not as a licensed real estate agent.

2) The signing of standard form contracts, as well as other negotiations, took place in the offices of Lackman Realty, a large real estate agency in Missoula, where defendant Gregoryk worked as a salesman.

3) Lackman Realty was selling land in the same area and was advertising that land for sale. One of the plaintiffs, Jack Twite, responded to the advertising and was directed to Mr. Gregoryk. The record clearly discloses this statement:

> "A. Well, the land that I purchased, 20 acres
> adjacent to it was a result of my reading this
> ad in the paper by Jim Lackman and I called
> Jim Lackman and asked about this land that he had
> advertised and at that time Jim Lackman told me
> that his, that one of his agents, Dave Gregoryk,
> was handling the sale of this property."

From these facts it was reasonable for plaintiffs to believe they were dealing with a bonded real estate salesman.

The licensed real estate agent (Gregoryk) never informed plaintiffs that he was dealing with the property as the owner. In light of the public policy of the Act, that of protection for the benefit of the public dealing with realtors or realty salesmen who may be "irresponsible or insolvent", we must conclude defendant Gregoryk in this transaction did not meet minimum standards that would alert a lay person this was not a "Lackman Realty" transaction.

The second issue is whether attorney fees and interest can be recovered in addition to the full amount of the bond. The language of the surety bond provides:

> "The aggregate liability of the surety
> hereunder, whether to one or more persons,
> shall in no event exceed the total sum of
> TEN THOUSAND DOLLARS ($10,000.00)."

In Lapke v. Hunt, (1968), 151 Mont. 450, 460, 443 P.2d 493, appellant in a real estate transaction urged that interest could not be collected if it exceeded the face value of liability under the bond. This Court reasoned:

> "We hold that in an action against a surety
> company upon a bond issued by that company, interest
> may be awarded even if that interest, in addition
> to the amount of damages awarded, exceeds the amount
> of liability stated in the bond.  12 Am.Jur.2d, Bonds,
> §45, p. 508; 11 C.J.S. Bonds §132(b), p. 511."

The Court further held that interest would commence as a general rule, upon demand made upon licensee, but where no demand was made on the surety the liability commenced upon the filing of the complaint against licensee.

Section 66-1940(c), R.C.M. 1947, since repealed by the 1977 legislature but the statute in force at the time this action accrued, read in part:

> "(c)* * * In all cases where suit is brought
> against the broker or the salesman, and his
> surety, the court shall, upon entering judgment
> for the plaintiff, allow as a part of the costs
> of suit a reasonable amount as attorney's fees.
>
> "All penalties  provided for by this section
> may be collected from the broker's and salesman's
> bonds provided by section 66-1933." (Emphasis added.)

Costs of suit are recognized to be collectable beyond the face value of the bond and hence with precise statutory authority attorney fees in this instance will be a part of the cost of suit.

The judgment of the trial court is reversed.  The cause is remanded to the trial court to enter judgment for plaintiffs

and conduct a hearing to determine the correct amount of interest and reasonable attorney fees to be included in the cost of suit.

                                          _____
                                                  Justice

We Concur:

Justices.

. . . . . . . .

Mr. Chief Justice Frank I. Haswell, dissenting:

I would affirm the judgment of the District Court.

The surety bond here was issued in conformity with the requirements of the Real Estate Licensing Act of 1963, specifically section 66-1933, R.C.M. 1947, as amended. This statute and the bond issued thereunder limit the surety's liability, among other things, to losses resulting from violation of the Act by the salesman. The Act specifically exempts sales of his own property by a real estate salesman:

> "66-1926. EXEMPTED CLASSES. A single act performed, for a commission or compensation of any kind, in the * * * selling * * * of real estate * * *, except as hereinafter specified, shall constitute the person performing any such acts a real estate broker or real estate salesman. The provisions of this act, however, shall not:

"(1) apply to any person who, as owner, * * *
shall perform any of the aforesaid acts with
reference to property owned * * * by himself * * *."
(Emphasis supplied.)

In my view the language of both the statute and the surety bond is clear and unambiguous. Under such circumstances, there is nothing for this Court to construe. Dunphy v. Anaconda Company, (1968), 151 Mont. 76, 438 P.2d 660 and cases cited therein. The function of this Court is simply to ascertain what in terms or in substance is contained in the statute and bond and not to insert what has been omitted nor to omit what has been inserted. Section 93-401-15, R.C.M. 1947.

In short, it is simply the duty of the Supreme Court to accept the statute and bond as written. Policy considerations should not be permitted to control plain language.

_Frank L. Haswell_
Chief Justice.

- 9 -