No. 89-603

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

YELLOWSTONE VALLEY PROPERTIES,
a Montana General Partnership,

Petitioner and Appellant,

v.

THE BOARD OF REALTY REGULATION, DEPART-
MENT OF COMMERCE, STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James C. Reuss, Wright, Tolliver & Guthals,
Billings, Montana

For Respondent:

Mary Anne Simpson, Department of Commerce, Helena,
Montana

Submitted on Briefs: April 19, 1990

Decided: June 20, 1990

Filed:

_Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Yellowstone Valley Properties, a Montana general partnership, appeals the refusal of the Thirteenth Judicial District, Yellowstone County, to review a decision of the Board of Realty Regulation. The Board ruled that Yellowstone Valley Properties could not recover from the real estate recovery account for an unsatisfied judgment against one of its partners arising from the sale of the partnership's property. We affirm.

Yellowstone Valley Properties raises the following issues:

1. Whether the Board of Realty Regulation erred in denying Yellowstone Valley Properties' application for payment from the real estate recovery account on the grounds that the transactions upon which the Yellowstone Valley Properties' judgment was based were not ones for which a real estate license was required.

2. Whether as a matter of public policy the recovery account should extend to the acts of a licensed real estate agent notwithstanding the fact that the agent committed defalcations in selling land of which he is deemed an owner.

The facts of this case are not in dispute. Yellowstone Valley Properties [hereinafter YVP] is a general partnership under the laws of Montana engaged in the business of owning, subdividing, developing and selling real estate in the Billings, Montana, area. Kenneth Lee Eames was the managing general partner of YVP holding a power of attorney authorizing him to act for the partnership in

2

property sales. Between August 1981 and September 1986, Eames committed numerous acts of fraud and conversion in the sale of YVP property causing substantial loss to the partnership. As a result of those acts, YVP won a civil judgment against Eames for $166,850, but YVP was unable to execute that judgment. YVP then applied to the Board of Realty Regulation [hereinafter Board] for the maximum $25,000 payment from the real estate recovery account. The Board denied the claim, and the District Court denied YVP's petition for judicial review.

The only question here is a question of law. An agency's conclusion of law arises to a reversible abuse of discretion when it is clearly contrary to legislative intent. City of Billings v. Billings Firefighters Local No. 521 (1982), 200 Mont. 421, 431, 651 P.2d 627, 632.

On YVP's first issue, the plain language of the relevant statutes leaves no doubt that the Board correctly rejected YVP's application. Subject to a number of restrictions not relevant to the present issue, a person may file a claim against the recovery account for unrecoverable judgments based on "any act or transaction . . . for which a license is required under this chapter . . . ." Section 37-51-503(1), MCA. The definition of "person" as used in the real estate licensing statutes includes a partnership. Section 37-51-102(8), MCA. Thus a partnership such as YVP is entitled to file against the recovery fund. However, at the

3

time this case arose, a person was statutorily exempted from the licensing requirement when selling his own property. Sections 37-51-301(1) and -103(1)(a), MCA (1985). A partner, such as Eames, is a co-owner of the partnership's property. Section 35-10-502(1), MCA. As an owner of the property sold in the fraudulent transactions, Eames's actions were not subject to the real estate licensing requirements and, therefore, were not subject to the recovery account.

On the second issue, YVP relies heavily on Twite v. Western Sur. Co. (1978), 176 Mont. 286, 577 P.2d 1219. In Twite the plaintiffs purchased property from the defendant, a licensed real estate agent. The defendant held himself out as an agent of a real estate company even though he was covertly selling his own property. At the time of the sale, the defendant was in default on the contract for deed under which he held title to the property. This Court held that under the public policy of the Real Estate Licensing Act, the plaintiffs were entitled to recover from the defendant's bonding company notwithstanding the Act's licensing exemption for owners selling their own property.

YVP now argues that Twite controls the present case. Like the present statutes, the law governing Twite provided an exemption from the real estate licensing requirements for owners selling their own property. Section 66-1926(1), RCM (1947). In Twite, this Court refused to rely on the owner exemption because it would

4

contravene public policy when a licensed real estate agent committed fraud in the sale of his own property.

> The fact that a person can sell his own property without being in violation of the Real Estate Act, for failure to purchase a real estate license, does not lend itself to the proposition that a licensed real estate salesman is relieved of his responsibility under section 66-1937, merely because he has taken property into his name before defrauding a purchaser. This would render the Act a nullity. Furthermore, it will stand without discussion that this kind of arrangement would be strictly against public policy, which is to protect the public from unscrupulous and insolvent real estate agents and brokers.

Twite, 176 Mont. at 289, 577 P.2d at 1221.

We agree with the Board that Twite is distinguishable; it was decided under a standard which the legislature has since changed. The law at that time allowed recovery against a real estate agent's $10,000 bond for acts, "arising in the course of the [agent's] practice as a real estate broker or salesman." Section 66-1933, RCM (1947). The plaintiffs in Twite recovered on the defendant's bond because the defendant led the plaintiffs to believe that they were dealing with a bonded real estate salesman. Twite, 176 Mont. at 290-91, 577 P.2d at 1221-22. His acts, therefore, fell within his practice as a real estate salesman.

The current standard is different. The 1985 Legislature replaced the bonding requirement with the recovery account and changed the standard of recovery. Act approved May 9, 1985, ch.

5

688, § 5, 1985 Mont. Laws 1537, 1539-40. The statute now allows a person to file against the recovery account for judgments based on the "conversion of trust funds or arising directly out of any act or transaction . . . for which a license is required under this chapter . . . ." Section 37-51-503(1), MCA (emphasis added). As noted above, no license is required, or recovery allowed, when the act complained of arises out of the sale of property owned by the seller.

YVP argues that, as a matter of public policy, the owner exemption should not apply to licensed brokers and salesmen. YVP correctly asserts that the current owner exemption may be contrary to the public policy concerns expressed in Twite. It may allow real estate brokers and salesmen to circumvent licensing requirements by simply purchasing the property they plan to transfer. As an unintended consequence, the owner exemption would also partially defeat the purposes of the recovery account. See e.g. Richards v. Income Realty and Mortgage, Inc. (Colo. App. 1982), 654 P.2d 864, 866.

The problem raised by the appellant may give the legislature reason to reconsider the current licensing provisions and, in fact, it may have already acted. The 1989 Legislature amended the licensing exemption for persons acting as attorneys-in-fact to correct a similar problem. The Legislature found

> that there is a potential use of the attorney-in-fact exemption by certain persons on a regular or consistent basis, thereby allowing those persons to avoid license requirements and negating adequate safeguards to the public . . . .

Act approved March 20, 1989, ch. 180, 1989 Mont. Laws 386, 386-87. The 1989 Legislature also passed an amendment which might affect all exemptions to the licensing requirements. It replaced the obligatory "shall" in the exemption statute with the permissive "may." Act approved March 24, 1989, ch. 314, § 2, 1989 Mont. Laws 669, 670. Presumably, this change will give the Board some discretion in adopting rules and granting exemptions in the future.

Though the 1989 Legislature may have reacted to the policy considerations presently raised by YVP, those concerns do not give this Court authority to retroactively amend the statutes. When, as here, the words used are unambiguous, this Court is bound by the plain meaning of the statutes. Boegli v. Glacier Mountain Cheese Co. (Mont. 1989), 777 P.2d 1303, 1305, 46 St.Rep. 1389, 1391. We hold with the District Court that the Board did not abuse its discretion in refusing to accept YVP's application for funds from the recovery account.

Affirmed.

Chief Justice

We concur:

_John Conway Harrison_

_[signature]_

_William E. Hunt Sr._

_R. C. McDonough_

Justices