William **MURPHY** and Kathleen Murphy, his wife

v.

**TODAY'S PROPERTIES, LTD.** and Albert Cox and Commonwealth of Pennsylvania, State Real Estate Commission, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided March 8, 1996.

Jude T. Walsh and Anita P. Shekletski, for Appellant, State Real Estate Commission.

Edward A. Reilly, Jr., for Appellees.

Before McGINLEY and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

The State Real Estate Commission (Commission) appeals from an order of the Court of Common Pleas of Wayne County (trial court) which ordered that William Murphy and Kathleen Murphy be reimbursed the amount of twenty-five thousand dollars ($25,000) in judgment damages from the Pennsylvania Real Estate Recovery Fund (Recovery Fund), in accordance with the Real Estate Licensing and Registration Act (Act).[1] We affirm.

In an opinion in support of its June 7, 1995 order, the trial court did not set forth the facts of the present case because the basic facts are not in dispute. The relevant undisputed facts, as taken from the record and briefs filed herein, are as follows.

Albert Cox was a licensed real estate broker in Pennsylvania with license number RB–040043–A. In May 1991, the Murphys, who resided in Hasbrook Heights, New Jersey, drove to Cox's office in Greentown, Pennsylvania, in response to a newspaper ad in the New York Daily News for the sale of lots and homes. The Murphys were shown several unimproved lots in Wayne County by Cox.

In June 1991, the Murphys decided to purchase a parcel of property known as Lot 141 and inquired about the final price. Cox stated that he would get back to them. There was no written sales agreement and the sale was consummated on August 9, 1991, with the Murphys paying cash for the lot. Cox stated that he would arrange for the deed, title insurance, transfer tax and recording costs.

The Murphys received a deed and title insurance policy for Lot 141. Upon reviewing the deed, the Murphys learned that Today's Properties, Ltd. (Today's) was the previous owner of Lot 141. Today's was a Pennsylvania corporation and Cox was the chief executive officer and treasurer.

On September 17, 1991, the Murphys, Cox and Today's entered into a contract for the construction of a home on Lot 141. The home was completed in May 1992.

In early 1992, Cox represented to the Murphys that Today's owned Lot 136 and Lot 140, which abutted the Murphys' Lot 141 in the rear and on the side, and that the two lots were for sale. The Murphys inquired as to a price and Cox stated that he had to talk to some people and would get back to them.

On May 23, 1992, the Murphys issued a $15,000 check to Today's for the purchase of Lot 140. Cox represented to the Murphys that the sale price for Lot 140 included closing costs.

On July 13, 1992, the Murphys issued a $10,000 check to Today's for the purchase of Lot 136. Cox again represented to the Murphys that the sale price included title insurance and all closing costs.

The Murphys never received any deeds or title insurance for Lots 136 and 140. After numerous trips to Cox's office, the Murphys found it closed. The Murphys also never recovered the $25,000 they paid for the lots from Today's or Cox.

In February 1993, the Murphys retained counsel, began an investigation, and learned for the first time that neither Today's or Cox had ever owned Lot 140. It was owned by a local church. The Murphys also learned that the recorder's records for Lot 136 showed that the lot was owned by Today's, but that a judgment was entered against Today's on May 26, 1992 based upon default of promissory note payments to the bank. The recorder's records showed further that on January 28, 1993, after a sheriff's sale in December 1992, a deed was issued conveying title to Lot 136 to PNC Realty Holding Corporation of Pennsylvania.

On March 2, 1994, the Murphys filed a civil action against Today's and Cox with the trial court alleging fraud, misrepresentation and deceit with respect to the sale of Lots 140

---

1. Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. §§ 455.101—455.902.

and 136 to the Murphys. Today's and Cox failed to answer the complaint and upon motion by the Murphys, a default judgment was entered against Cox and Today's on December 19, 1994.

On February 16, 1995, the Murphys filed a petition for a rule to show cause with the trial court. The trial court issued a rule upon the Pennsylvania Bureau of Professional and Occupational Affairs (bureau) to show cause why the court should not issue an order directing that the Murphys be paid $25,000 plus costs from the Recovery Fund as provided in section 803 of the Act.[2] The Commission filed an answer to the rule to show cause on March 3, 1995.

Hearings were held before the trial court on April 19, 1995 and May 31, 1995. After the April 19, 1995 hearing, a stipulation and order was filed by the trial court wherein the trial court approved the Commission's stipulation that the Murphys were defrauded in the amount of $15,000 by Cox, a real estate licensee, in the transaction of the sale of lot 140.

On June 7, 1995, the trial court entered an order ordering the Commission to reimburse the Murphys in the amount of $25,000 from the Recovery Fund. This appeal followed.[3]

■ Initially, we note that our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings of fact not based on substantial evidence. *Jones v. Whiting*, 152 Pa.Cmwlth. 297, 618 A.2d 1213 (1992).

**2.** 63 P.S. § 455.803. Pursuant to section 803, when any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person licensed under the Act, upon grounds of fraud, misrepresentation, or deceit with reference to any transaction for which a license or registration certification is required under the Act, the aggrieved person may, upon termination of all proceedings, including reviews and appeals, file an application in the court in which the judgment was entered for an order directing payment out of the Recovery Fund.

**3.** Prior to filing a notice of appeal to this court, the Commission filed a motion for post trial relief and reconsideration of the June 7, 1995 order with the trial court on June 16, 1995. On June 19, 1995, the trial court denied the Commission's motion and the Commission filed a

■ The Commission raises the following issues on appeal:

Whether the trial court abused its discretion, committed an error of law and/or made findings of fact not based upon substantial evidence by ruling that:

1. Cox's sale of Lot 136 to the Murphys was a transaction for which a license or registration certificate was required under the Act;

2. Cox's sale of Lot 136 to the Murphys was not excluded from the provisions of the Act by section 304, 63 P.S. § 455.304;

3. The Murphys have exhausted all reasonable remedies at law or in equity in attempting to collect their final judgment from Cox as required by section 803(b)(3) of the Act, 63 P.S. § 455.803(b)(3);

4. A default judgment was sufficient to satisfy the requirements of the Act; and

5. Section 803(d) of the Act, 63 P.S. § 455.803(d), permits payment to the Murphys in excess of $20,000.[4]

## I. WHETHER THE SALE OF LOT 136 WAS A TRANSACTION FOR WHICH A LICENSE WAS REQUIRED UNDER THE ACT.

■ In support of its first issue, the Commission points out that the Recovery Fund was established by sections 801–803 of the Act to provide reimbursement to persons who are victims of acts of fraud, misrepresentation or deceit committed by real estate licensees and with reference to any transac-

notice of appeal to this court from the trial court's June 7, 1995 order on July 6, 1995.

**4.** The Commission has filed a reply brief in this matter wherein the Commission sets forth an additional statement of question involved not originally found in the Commission's principal brief. We remind counsel for the Commission that while an appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief, a reply brief may not be used as an opportunity to raise additional issues on appeal. *See* Pa.R.A.P. 2113; *Filoon v. Pennsylvania Public Utility Commission*, 167 Pa. Cmwlth. 693, 648 A.2d 1339 (1994). Accordingly, this court will not address the additional statement of the question involved stated in the Commission's reply brief.

tion for which a license or registration certificate is required under the Act. *See* 63 P.S. §§ 455.801–803. The Commission argues that in the civil complaint filed against Cox and Today's by the Murphys in the trial court, the Murphys allege that: (1) they purchased a lot and had a home built on that lot by Today's; (2) they issued two personal checks made payable to Today's for the purchase of Lots 136 and 140; and (3) Today's received payment for the sale of these two lots but failed to transfer ownership to the Murphys.

The Commission contends that Today's was never licensed by the Commission; therefore, the fraud, misrepresentation, and deceit allegedly committed by Today's with respect to the sale of Lot 136 was not committed by a person licensed under the Act. Consequently, the Commission argues, the Recovery Fund is not authorized to make payment from the fund to the Murphys based upon a civil action against a defendant who is not licensed under the Act.

Moreover, the Commission argues that Cox was not the broker of record for Today's nor was he acting in his capacity as a licensed broker. Cox, the Commission argues, was functioning as a principal by being the chief executive officer of his corporation, Today's. The Commission contends that Cox was not required to be licensed under the Act to be the chief executive officer of a corporation that purchases and sells its own real estate.

In response, the Murphys argue that Cox was a licensed real estate broker who was acting on behalf of a separate legal entity, namely the corporation known as Today's. The Murphys contend that an agency relationship existed between them and Cox beginning in 1991 and the Murphys specifically relied upon Cox as their agent who handled all aspects of the initial sale of Lot 141 to the Murphys.

Based on the record herein, we agree with the trial court's determination that it was the misrepresentations of Cox and not those of Today's that the Murphys relied upon in issuing the two checks for the purchases of Lots 136 and 140. It is undisputed that Cox was a licensed real estate broker in the Commonwealth of Pennsylvania. It is also undisputed that Today's was not licensed as a broker.[5]

The record shows that the Murphys' relationship with Cox began in 1991 when, in response to Cox's advertisement, the Murphys were shown several lots in Wayne County and eventually purchased Lot 141. From that time forward, it was the representations of Cox upon whom the Murphys relied upon, not the representations of Today's. While it is true that Cox was the chief executive officer and treasurer of Today's, the record does not show that Cox was acting in his capacity as an officer of that corporation when he approached the Murphys about purchasing Lots 136 and 140. To the contrary, the record shows that Cox was acting as a licensed real estate broker on behalf of both the Murphys and Today's.[6]

Accordingly, the sale of Lot 136 was a transaction for which a license or registration certificate was required under the Act.

## II. WHETHER THE SALE OF LOT 136 TO THE MURPHYS WAS EXCLUDED FROM THE PROVISIONS OF THE ACT BY SECTION 304, 63 P.S. § 455.304.

Section 304 of the Act governing exclusions, provides that the provisions of the Act shall not apply, *inter alia*, to an "owner of real estate with respect to property owned or leased by such owner." 63 P.S. § 455.304(1). "In the case of a . . . corpora-

---

5. Section 513 of the Act provides that if an applicant for a broker's license is a corporation, the individual designated as broker of record must also obtain a license as a real estate broker. 63 P.S. § 455.513. The Murphys alleged in paragraph 4 of their complaint filed against Cox and Today's that Cox was the broker of record for Today's. *Reproduced Record* (R.), Exhibit 1, p. 2.

6. We note that by acting for both the Murphys and Today's in the sale of the lots to the Murphys, Cox violated section 604(a)(7) of the Act which prohibits "[a]cting for more than one party in a transaction without the knowledge and consent in writing of all parties for whom he acts." 63 P.S. § 455.604(a)(7).

tion, this exclusion shall not extend to more than five of its ... officers ... nor to other ... corporation personnel or employees." *Id.*

The Commission argues that, pursuant to section 304(1) of the Act, Today's and Cox were excluded from the provisions of the Act. The Commission contends that the Act clearly excludes an owner of real estate from the provisions of the Act, including sections 801–803. This exclusionary provision, the Commission argues, also applies to Cox as the corporate officer of Today's.

The Commission argues that Cox was acting in his capacity as owner of the property by virtue of the fact that he was a shareholder and officer of Today's; therefore, Cox was not acting as a broker for another or for a fee as provided for in the Act. The Commission relies on authority from other jurisdictions to support its position all of which this court finds unpersuasive.[7]

In response, the Murphys argue that to maintain the position that all of Cox's actions were taken as an officer of Today's and not as a real estate broker flies in the face of the facts presented. We agree with the Murphys.

As stated above, the record shows that Cox was acting as a broker on behalf of both the Murphys and Today's and not as the owner of the property due to his capacity as a shareholder and corporate officer. The definition of broker under the Act is "[a]ny person who, for another and for a fee, commission or other valuable consideration ... negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate." Section 201 of the Act; 63 P.S. § 455.201.

The record shows that Cox negotiated, as a broker, in the sale of the initial lot, Lot 141, to the Murphys and in the sale of Lot 136. The Murphys did not learn that Today's was the previous owner of Lot 141 until after they received the deed. Moreover, when asked the sale price of Lot 136, Cox informed

the Murphys, as he did with respect to the sale of Lot 141, that he would have to get back to them. Therefore, it is apparent that Cox was not acting as the owner of Lot 136 but as a licensed real estate broker with respect to the sale of Lot 136.

Accordingly, the sale of Lot 136 was not excluded from the provisions of the Act by the owner exclusion provision set forth in section 304 of the Act.

## III. WHETHER THE MURPHYS HAVE FAILED TO EXHAUST ALL REASONABLE REMEDIES AT LAW OR IN EQUITY.

Section 803(b) of the Act provides that an aggrieved person seeking to recover damages from the Recovery Fund shall be required to show:

(1) That he is not a spouse of the debtor, or the personal representative of said spouse.

(2) That he has obtained a final judgment as set out in this section.

(3) That all reasonable personal acts, rights of discovery and such other remedies at law and in equity as exist have been exhausted in the collection thereof.

(4) That he is making said application no more than one year after the termination of the proceedings including reviews and appeals in connection with the judgment.

63 P.S. § 455.803(b).

■ The Commission contends that the Murphys have not exhausted all personal acts, rights of discovery and other such remedies at law or in equity as exist. The Commission contends that the Murphys, in their petition, have failed to aver: (1) that they examined the public records in Boca Raton, Florida to determine if Cox owns any executable property; and (2) that they sent interrogatories as an aid in discovery to Cox at his address in Florida in an effort to determine if Cox possesses any assets or income that they could levy upon.

7. Specifically, the Commission relies on Transactions Within Public Security or Guarantee Fund, 38 A.L.R. 4th 792; *Yellowstone Valley Properties v. Board of Realty Regulation*, 243 Mont. 241, 794 P.2d 341 (1990); *McGaughey v. Fox*, 94 Cal.

App.3d 645, 156 Cal.Rptr. 593 (1979); *Twite v. Western Sur. Co.*, 176 Mont. 286, 577 P.2d 1219 (1978); and *Richards v. Income Realty and Mortgage, Inc.*, 654 P.2d 864 (Colo.Ct.App.1982).

In response, the Murphys contend that the Commission's contentions imply that the Murphys knew the location of Cox in Florida at the time the Murphys filed their petition for reimbursement from the Recovery Fund. To the contrary, the Murphys point out, the Commission knows that the Murphys had no idea where Cox was located in Florida because the Commission itself denied the Murphys access to this information.[8] The Murphys point out that the trial court stated specifically in its opinion that it appeared that the Commission knew where Cox was located but would not provide this information to the Murphys because this action violated the Commission's regulations. The Murphys contend that they performed reasonable acts of discovery and that the Act does not require exhaustive acts.

We agree with the trial court's conclusion that the Murphys have exhausted all reasonable remedies thereby satisfying the requirements of the Act. The record supports the Murphys contention that they performed all reasonable personal acts and rights of discovery in attempting to recover the $25,000 they paid for Lots 136 and 140. Perhaps if the Commission would change its regulations regarding the disclosure of the whereabouts of licensees who have allegedly defrauded citizens of their money in real estate scams, less people would find the need to resort to making an application for reimbursement from the Recovery Fund.

## IV. WHETHER THE ENTRY OF A DEFAULT JUDGMENT SATISFIES THE REQUIREMENT OF THE ACT THAT A FINAL JUDGMENT BE OBTAINED PRIOR TO MAKING APPLICATION FOR RECOVERY FROM THE RECOVERY FUND.

█ The Commission argues that the Murphys' petition fails to satisfy the requirements of the Act because a default judgment does not qualify as a final judgment within the contemplation of section 803 of the Act. The Commission relies, *inter alia,* upon this court's decision in *Jones v. Whiting* to support its position.[9] However, a review of our decision in *Jones* reveals that the Commission's reliance is misplaced.

In *Jones,* the petitioner filed a civil complaint against a person to whom petitioner had loaned money. The loans were secured by mortgages on residential real estate owned by the debtor to petitioner. The debtor failed to answer the petitioner's civil complaint; therefore, a default judgment was entered against the debtor. Six months later, petitioner filed with the trial court an affidavit alleging therein that the petitioner had been induced to loan the debtor money as a result of the debtor's deception and misrepresentation.

Relying on the default judgment, petitioner filed an application with the trial court requesting payment from the Recovery Fund pursuant to section 803 of the Act. The petitioner alleged that he was entitled to payment from the Recovery Fund because he had received a final judgment on grounds of fraud, misrepresentation or deceit and had exhausted all remedies to collect the money owed to him as the debtor was insolvent.

The trial court denied petitioner's petition for payment from the Recovery Fund for failure to meet the requirements of section 803 of the Act. The trial court determined that the petitioner, *inter alia,* failed to produce clear and convincing evidence that the debtor had induced him to loan the debtor money through fraud, misrepresentation or deceit.

On appeal to this court, the petitioner contended that the trial court erred in denying his application for recovery from the Recovery Fund because, even though his complaint

---

8. At the April 19, 1995 hearing before the trial court, counsel for the Commission admitted that it did not divulge Cox's whereabouts in Florida to the Murphys until the Commission filed a reply brief to the petition with the trial court. Supplemental Reproduced Record, p. 18.

9. The Commission also relies on authority from other jurisdictions. Specifically, *Buccella v.* *Mayo,* 102 Cal.App.3d 315, 162 Cal.Rptr. 369 (1980); *Gray v. Fox,* 151 Cal.App.3d 482, 198 Cal.Rptr. 720 (1984); *Texas Real Estate Commission v. Nagle,* 767 S.W.2d 691 (1989); and *Arizona Real Estate Department v. Arizona Land Title & Trust Co.,* 9 Ariz.App. 54, 449 P.2d 71 (1968).

did not allege fraud, misrepresentation or deceit, he made such allegations in his affidavit filed after the entry of the default judgment.

In affirming the trial court's decision, this court stated that:

> In order for [the petitioner] to have met the requirement that the final judgment be obtained upon grounds of fraud, misrepresentation or deceit, [the petitioner's] complaint would have had to allege one or more of those grounds and a judgment would have had to be entered in his favor on that basis. Because [the petitioner's] complaint did not allege fraud, misrepresentation or deceit, he did not satisfy that requirement of Section 803 of the [Act].

*Jones,* 618 A.2d at 1214–15 (footnote omitted).

In footnote 5 of our decision in *Jones,* this court pointed out that the Commission, in its denial of repayment from the Recovery Fund, did not raise the issue of whether a default judgment was sufficient to satisfy the requirements of section 803 of the Act when the complaint upon which the default judgment was entered alleged fraud, misrepresentation or deceit. *Id.* at 1215 n. 5.

The Commission contends that this footnote in *Jones* questions whether a default judgment is sufficient to satisfy the requirements of the Act. Further, the Commission relies upon *Department of Environmental Resources v. Allias,* 20 Pa.Cmwlth. 222, 341 A.2d 226 (1975) for its position that a default judgment fails to satisfy the final judgment requirement specified in section 803 of the Act because, as a matter of law, a default judgment does not admit the sufficiency of the pleading in law to sustain a judgment, nor does it admit the facts as stated constitute a cause of action. Therefore, the Commission contends, the default judgment entered in this matter is not legally sufficient to satisfy the requirements of section 803 of the Act; consequently, the Murphys' petition fails, as a matter of law, to state a legally cognizable claim for relief from the Recovery Fund.

■ We note that the rules permitting entry of default judgments were designed to prevent a dilatory defendant from unreasonably thwarting a plaintiff's efforts to establish a claim. *Bildstein v. McGlinn,* 320 Pa.Superior Ct. 416, 467 A.2d 601 (1983). However, a default judgment, once entered may be opened or stricken upon motion of the dilatory defendant. As pointed out by this court in *Allias:*

> It is well settled that a petition to open a judgment is an appeal to the court's discretion and that this discretion may properly be exercised to grant such a petition if (1) the petition is promptly filed, (2) a defense is shown to exist on the merits, and (3) the default is reasonably explained or excused.

*Allias,* 341 A.2d at 227.

■ Moreover, a default judgment may not be stricken unless the face of the record shows the same to be baseless. *Id.* at 228. But if a dilatory defendant does not move to open or strike the default judgment, the default judgment for all intent and purposes is a final judgment. Accordingly, we reject the Commission's contentions that a default judgment may not satisfy the final judgment requirement of section 803 of the Act.

Therefore, to dispel any questions or confusion, we hold that a default judgment which has been obtained pursuant to a civil complaint that sufficiently alleges fraud, misrepresentation or deceit with reference to any transaction covered under the Act satisfies the final judgment aspect of section 803. Of course, whether the civil complaint in question upon which a default judgment has been obtained meets the requirement of sufficiently alleging fraud, misrepresentation or deceit is a question within the province of the trial court. We believe that this holding effectuates the purpose of the Act which is to protect buyers and sellers of real estate from abuse by persons engaged in the real estate business. *Kalins v. State Real Estate Commission,* 92 Pa.Cmwlth. 569, 500 A.2d 200 (1985).

■ In the present case, the trial court found that the Murphys' complaint contained numerous allegations as to fraud, misrepresentation and deceit on the part of Cox. A review of the Murphys' complaint reveals that the trial court's finding is correct. *See*

R., Exhibit 1. Accordingly, the Murphys have satisfied the final judgment requirement of section 803 of the Act.

## V. WHETHER SECTION 803(D) OF THE ACT PERMITS PAYMENT TO AN APPLICANT IN EXCESS OF $20,000.

 Finally, the Commission argues that the trial court erred in awarding the Murphys a total of $25,000 in damages; $10,000 for Lot 136 and $15,000 for Lot 140. The Commission contends that section 803(d) of the Act limits the total amount that the Murphys can recover to $20,000. Section 803(d) provides, in relevant part, that:

> (d) When there is an order of the court to make payment or a claim is otherwise to be levied against the fund, such amount shall be paid to the claimant in accordance with the limitations contained in this section. Notwithstanding any other provisions of this section, the liability of that portion of the fund allocated for the purpose of this act shall not exceed $20,000 for *any one claim* and shall not exceed $100,000 per licensee.

63 P.S. § 455.803(d) (emphasis added).

In the present case, it is clear that the Murphys made application for recovery from the Recovery Fund on the basis of two transactions. The first transaction occurred on May 23, 1992, when the Murphys issued a $15,000 check for the purchase of Lot 140. The second transaction occurred on July 13, 1992, when the Murphys issued a $10,000 check for the purchase of Lot 136.

Accordingly, the plain language of section 803(d) permits the Murphys to recover up to $20,000 for each claim. In this case, the amounts recovered for each claim were $15,000 and $10,000, respectively. Therefore, the trial court did not err in ordering that the Murphys be reimbursed a total of $25,000 from the Recovery Fund.

The order of the trial court is affirmed.

### ORDER

NOW, this 8th day of March, 1996, the order of the Court of Common Pleas of Wayne County, at No. 97 Civil 1994, dated June 7, 1995, is affirmed.