D.J. MALATESTA ASSOCIATES,
INC., Appellant,

v.

CENTURY 21 RUETER, INC.; Rueter
Realty Co.; Francis P. Rueter and
Commonwealth of Pennsylvania,
State Real Estate Commission.

D.J. Malatesta Associates, Inc., et al.

v.

Century 21 Rueter, Inc.; Rueter Realty
Co., and Francis P. Rueter and Com-
monwealth of Pennsylvania, State
Real Estate Commission.

Irwin A. Egendorf and Janson Associ-
ates (Irwin A. Egendorf & Jayne
H. Egendorf), Appellants.

Commonwealth Court of Pennsylvania.

Argued March 8, 1999.

Decided Sept. 9, 1999.

As Clarified on Reconsideration
Nov. 17, 1999.

Reargument Denied Nov. 17, 1999.

William Miller, Philadelphia, for appellants.

Jude T. Walsh, Harrisburg, for appellee.

Before DOYLE, J., McGINLEY, J., and JIULIANTE, Senior Judge.

DOYLE, Judge.

D.J. Malatesta Associates, Inc. (Malatesta) appeals from an order of the Court of Common Pleas of Philadelphia County which adjudicated the claims of twenty individual claimants against three real estate brokers under the Pennsylvania Real Estate Recovery Fund (Fund)[1] for misrepresentation and fraudulent conduct.

The lengthy procedural and factual history of the litigation is as follows. On March 20, 1995, Malatesta filed six civil actions against Century 21–Rueter, Inc., d/b/a Rueter Realty Company in Common Pleas, alleging fraud and misrepresentation in connection with various real estate transactions. On April 25, 1995, Century 21–Rueter, Inc. filed for bankruptcy in the U.S. District Court for the Eastern District of Pennsylvania. On September 7, 1995, Century 21–Rueter, Inc.'s bankruptcy was consolidated with the bankruptcy of Francis P. Rueter, the president and sole owner of Century 21–Rueter, Inc., following which, on August 12, 1996, a Bankruptcy Judge granted Malatesta relief from the automatic stay provisions pursuant to Section 362 of the Bankruptcy Code.[2]

On August 30, 1997, six default judgments were entered in favor of Malatesta in the six civil actions filed against Century 21–Rueter, Inc., with damages assessed at $57,520.58, $66,647.26, $100,762.00, $31,265.91, $37,575.35 and $50,214.65, respectively. On August 8, 1997, Malatesta filed with the Court of Common Pleas a motion for the payment of his judgments from the Real Estate Recovery Fund claiming that there were as many as six real estate licensees at issue involving Century 21–Rueter, Inc. On September 5, 1997, the Commission filed a response[3] stating that there were only three licensees involved, (1) Rueter Realty Company (Rueter Realty), a licensee holding three inactive licenses, (2) Century 21–Rueter, Inc. (Century 21), a licensee holding two inactive licenses and (3) Francis P. Rueter (Rueter), a licensee holding five inactive licenses, and, therefore, the maximum Fund liability under Section 803 of the Pennsylvania Real Estate Licensing and Registration Act (RELRA)[4] was $300,000.00. The Commission also contended that, in addition to Malatesta's claims, there were additional claimants who would be eligible for relief from the Real Estate Recovery Fund.

On September 16, 1997, the Court of Common Pleas entered an order granting the Commission's "Petition Pertaining to Liability, Joinder and Compromise of all Pennsylvania Real Estate Recovery Fund Claims" against licensees Francis P. Ruet-

---

1. The Real Estate Recovery Fund, established by the Act of February 19, 1980, P.L. 15, provides recovery for any aggrieved person who is the victim of fraud, misrepresentation or deceit in a real estate transaction involving an individual licensed as a real estate broker in Pennsylvania. Like other such funds in Pennsylvania protecting the public from professional fraud or misconduct, it is funded by the licensing renewal fees paid by each licensee.

2. 11 U.S.C. § 362.

3. As a result of Malatesta's petition, a representative of the Fund entered an appearance on September 5, 1997.

4. Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. §§ 455.101–.902.

er, Century 21–Rueter, Inc., Rueter Realty Company and the Commission. The order also provided that (a) within ten days of the docketing of the order, notices were to be sent to all claimants; (b) within 60 days, claimants were to file their claims with the Commission; and (c) within 120 days, the Commission was to file with Common Pleas a proposed order directing payment to the claimants.

On January 27, 1998, Common Pleas signed the Commission's proposed order, disposing of all of the claims, distributing the sum of $300,000.00 to 20 claimants, as follows:

| | | Amount alleged to be due by the claimant | Amount in distribution suggested by the Commission |
|---|---|---|---|
| 1. | Rose Pirrung | $ 80,000.00 | $ 17,946.76 |
| 2. | Alfreda M. Stampone | $ 31,476.50 | $ 17,946.76 |
| 3. | James & Delores Eisenhower | $ 30,000.00 | $ 17,946.76 |
| 4. | John & Genevieve Tilli | $ 115,000.00 | $ 17,946.76 |
| 5. | Edward & Josephine Jadczak | $ 150,000.00 | $ 17,946.76 |
| 6. | Walter & Frances Kittel | $ 50,000.00 | $ 17,946.76 |
| 7. | Anthony & Lois Fioravanti | $ 40,000.00 | $ 17,946.76 |
| 8. | Marie Joscelyne | $ 250,000.00 | $ 17,946.76 |
| 9. | John Joscelyne | $ 20,000.00 | $ 17,946.76 |
| 10. | Joseph & Mary Thompson | $ 60,000.00 | $ 17,946.76 |
| 11. | Carl & Florence Schwartz | $ 40,000.00 | $ 17,946.76 |
| 12. | Janet C. Sy | $ 37,800.00 | $ 17,946.76 |
| 13. | Edward J. Kapuscinski | $ 102,197.52 | $ 17,946.76 |
| 14. | Janson Associates | $ 78,500.00 | $ 17,946.76 |
| 15. | Irwin A. Egendorf | $ 615,000.00 | $ 17,946.76 |
| 16. | Malatesta Associates, Inc. | $ 343,985.75 | $ 17,946.76 |
| 17. | Deborah A. Kittel | $ 10,000.00 | $ 10,000.00 |
| 18. | Leonard J. Wrzensinski | $ 1,600.00 | $ 1,600.00 |
| 19. | Teresa Poprik | $ 626.78 | $ 626.78 |
| 20. | Susan M. Pawlukiewicz | $ 625.00 | $ 625.00 |
| | **Total** | $2,056,811.58 | $299,999.94 |

(Trial Court's Order and Proposed Schedule of Distribution, January 27, 1998, at 1–4; Reproduced Record (R.R.) at 133a–36a.) Four of the claimants who sought relief of less than $20,000.00 were paid in full. As to the other sixteen claimants, including Malatesta, Common Pleas divided the remaining sum into equal amounts of $17,946.76, in accordance with its interpretation of Section 803(c) of RELRA, 63 P.S. § 455.803(c).

On February 24, 1998, Malatesta filed a motion for reconsideration; Common Pleas vacated its January 27, 1998 order pending reconsideration and scheduled a hearing for April 17, 1998. At the hearing, Malatesta argued that more than three licensees were involved, and, therefore, the amount of money available for distribution from the Fund should be more than $300,-000.00. Common Pleas continued the case until May 15, 1998, at which time another hearing was held, and Common Pleas directed the parties to file supplemental briefs demonstrating which claimants had obtained final judgments against the defendants, the amounts of such final judgments and the dates such judgments were entered.

On July 14, 1998, Common Pleas entered an order denying all motions for reconsideration and reinstated its January 17, 1998 order, holding that, under its reading of RELRA, each aggrieved person is entitled to one "claim" only. Thus, Malatesta, despite having obtained six default judgments against Rueter, would be considered as having only one claim. This appeal followed.

On appeal to this Court,[5] Malatesta argues that (1) Common Pleas erred in interpreting Section 803(b) of RELRA, 63 P.S. § 455.803(b), as permitting only one claim for each aggrieved person; (2) Common Pleas erred in failing to hold a hearing to determine the validity of all the claims submitted by other parties in this matter, resulting in a denial of due process; (3) Common Pleas erred in finding all claimants eligible for recovery because many of the claims were merely prospective and had not yet been reduced to final judgment pursuant to Section 803(b)(2); and (4) Common Pleas erred in failing to properly pro rate the claims that were eligible for recovery.

The Commission, as Appellee, has taken the perplexing position of arguing that Common Pleas erred by adopting the Commission's own proposed schedule of distribution without first ascertaining whether final judgments had been obtained against all three real estate licensees and whether all claimants were eligible for recovery, and therefore, this Court should remand the case to the trial court with directions for redistribution.[6]

Four other claimants, James & Delores Eisenhower, Anthony & Lois Fioravanti, Marie Joscelyne and John Joscelyne, each of whom was awarded $17,946.76 by Common Pleas' proposed distribution, have also filed briefs with this Court asking that we affirm the final order of the Common Pleas Court.

We begin our task of statutory interpretation with Section 803 of RELRA, which establishes and defines the purpose of the Real Estate Recovery Fund:

**Application for recovery from fund**

(a) When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person licensed under this act, upon grounds of fraud, misrepresentation or deceit with reference to any transaction for which a license or registration certificate is required under this act ... and which cause of action occurred on or after the effective date of this act, the aggrieved person may, upon termination of all proceedings, including reviews and appeals, file an application in the court in which the judgment was entered for an order directing payment out of the Real Estate Recovery Fund of the amount unpaid upon the judgment.

(b) The aggrieved person shall be required to show:

(1) That he is not a spouse of the debtor, or the personal representative of said spouse.

**(2) That he has obtained a final judgment as set out in this section.**

(3) That all reasonable personal acts, rights of discovery and such other remedies at law and in equity as exist have been exhausted in the collection thereof.

(4) That he is making said application no more than one year after the termination of the proceedings, in-

**5.** Joining as Appellants in this appeal are Irwin A. Egendorf and Janson Associates, two of the twenty claimants at issue in Common Pleas' January 17, 1998 proposed distribution. Egendorf and Janson join Malatesta's argument that Common Pleas erred in interpreting Section 803(b) of RELRA to permit only one claim per aggrieved person, and also argue that this Court should vacate and remand the case for a pro-rata distribution in accordance with the provisions of Section 803(d) of RELRA, 63 P.S. § 455.803(c).

**6.** The Commission also argued in its brief that Malatesta obtained a valid default judgment against only one licensee, Century–21, and, therefore, the total amount available for recovery from the fund should be limited to $100,000.00, pursuant to Section 803(d) of RELRA. However, at argument, the parties agreed that three licensees were involved, and therefore, stipulated that the total amount available for recovery was $300,000.00. Because this issue is no longer in dispute, we will affirm Common Pleas' decision as to the maximum Fund liability of $300,000.00.

cluding reviews and appeals in connection with the judgment.

(c) The commission shall have the right to answer actions provided for under this section, and subject to court approval, it may compromise a claim based upon the application of the aggrieved party.

(d) When there is an order of the court to make payment or a claim is otherwise to be levied against the fund, such amount shall be paid to the claimant in accordance with the limitations contained in this section. **Notwithstanding any other provision of this section, the liability of that portion of the fund allocated for the purpose of this act shall not exceed $20,000 for any one claim and shall not exceed $100,-000 per licensee. If the $100,000 liability of the Real Estate Recovery Fund as provided herein is insufficient to pay in full claims adjudicated valid of all aggrieved persons against any one licensee or registrant, such $100,000 shall be distributed among them in such ratio that the respective claims of the aggrieved applicants bear to the aggregate of such claims held valid.** If, at any time, the money deposited in the Real Estate Recovery Fund is insufficient to satisfy any duly authorized claim or portion thereof, the commission shall, when sufficient money has been deposited in the fund, satisfy such unpaid claims or portions thereof, in the order that such claims or portions thereof were originally filed, plus accumulated interest at the rate of 6% a year.

(e) Upon petition of the commission the court may require all claimants and prospective claimants against one licensee or registrant to be joined in one action, to the end that the respective rights of all such claimants to the Real Estate Recovery Fund may be equitably adjudicated and settled.

(f) Should the commission pay from the Real Estate Recovery Fund any amount in settlement of a claim as provided for in this act against a licensee, the license of that person shall automatically suspend upon the effective date of the payment thereof by the commission. No such licensee shall be granted reinstatement until he has repaid in full plus interest at the rate of 10% a year, the amount paid from the Real Estate Recovery Fund.

(g) Should the commission pay from the Real Estate Recovery Fund any amount in settlement of a claim as provided for in this act against a registrant the registrant shall automatically be denied the right to sell cemetery lots upon the effective date of the payment thereof by the commission. No such registrant shall be granted the right to sell cemetery lots until he has repaid in full plus interest at the rate of 10% a year, the amount paid from the Real Estate Recovery Fund.

63 P.S. § 455.803 (emphasis added).

 The first issue we must address is whether Section 803 limits each aggrieved person to only one "claim," even when an aggrieved person has obtained more than one judgment against a licensee; distilled to its essence, we must determine what a "claim" is. In *Murphy v. Today's Properties, Ltd.*, 673 A.2d 6 (Pa.Cmwlth.1996), this Court held that the plain language of Section 803(d) does not set the maximum amount of recovery at $20,000.00 per claimant. Rather, the statute clearly states that if an aggrieved person has more than one claim, then he or she may recover up to $20,000.00 per claim. In *Murphy,* the aggrieved party made an application for recovery from the Fund on the basis of two separate transactions; the first transaction occurred on May 23, 1992, regarding a check issued for $15,000.00 for

the purchase of Lot 1, and the second transaction occurred on June 13, 1992, regarding a check issued in the amount of $10,000.00 for the purchase of Lot 2. This Court held that the trial court did not err in ordering reimbursement from the Fund in the amount of $25,000.00 because the language of the statute limited recovery to $20,000.00 for **each claim**, not for each party. Implicit in this holding, of course, was the determination that the two separate transactions were also two separate claims under Section 803 of RELRA.

■ In the present case, Malatesta obtained six default judgments against the licensees, in amounts ranging from $31,-265.91 to over $100,000.00. We find that, under our holding in *Murphy*, the clear and unambiguous words of the statute permit an aggrieved person to have more than one claim against a licensee, and, therefore, Common Pleas erred in holding that Section 803(b) limited an aggrieved person to only one claim, meaning a single claim regardless of the number of separate transactions involved. Accordingly, Malatesta, having obtained six judgments against the three licensees, each involving a separate and distinct fraudulent transaction, is eligible to recover up to $20,000.00 maximum from the Fund for *each* of its six separate claims, or a maximum recovery of $120,000.00.

■ The second issue, somewhat related to the first, is whether a claim must be reduced to a final judgment before it constitutes a valid, eligible claim for recovery under RELRA. Section 803(e) provides in relevant part:

Upon petition of the commission the court may require all claimants and prospective claimants against one licensee or registrant to be joined in one action, to the end that the respective rights of all such claimants to the Real Estate Recovery Fund may be equitably adjudicated and settled.

63 P.S. § 455.803(e). We find that Common Pleas properly included in its order and proposed distribution both prospective claimants, in accordance with Section 803(e), as well as those claimants who had obtained final judgments, pursuant to Section 803(b).

■ We recognize, of course, the legal tension between Section 803(b)(2) of RELRA, which states that an aggrieved person "shall be required to show ... (2) that he obtained a final judgment," and Section 803(e) which allows the Common Pleas Court to join "all claimants and **prospective** claimants" so as to adjudicate "the respective rights of **all** such claimants." However, when the complete scheme of Section 803 is viewed, and the complete language of Section 803(b)(2) is taken into account, that an aggrieved person "shall be required to show ... (2) that he has obtained a final judgment **as set out in this section**," full symmetry is achieved by reaching the conclusion that **some** aggrieved person who **already has** a final judgment is only required to begin the process of recovery from the Real Estate Recovery Fund under Section 803(a), which states:

When any aggrieved person obtains a final judgment ... against any person licensed under this act, upon grounds of fraud, misrepresentation, or deceit ... the aggrieved person may ... file an application in the court ... directing payment out of the Real Estate Recovery Fund....

63 P.S. § 455.803(a). In other words, its takes an aggrieved person who has already obtained a final judgment on the express grounds of fraud, misrepresentation or deceit **to activate** the adjudicatory process under RELRA, which proceedings could later include all of those persons who have been fraudulently dealt with by the errant real estate broker/licensee. A final judgment based on a contract claim would not be sufficient to originate the process, nor would an individual who possessed only an unliquidated claim for fraud or misrepresentation be entitled to file a complaint against the Real Estate Recovery Fund.

Thus we read the language in Section 803(b) of RELRA which identifies an "aggrieved person" to mean the "aggrieved person" set forth in Section 803(a); which aggrieved person is defined in Section 803(b)(2) "as set out in this section." This provides the symmetry that Section 1922(2) of the Statutory Construction Act of 1972 [7] provides for regarding the presumption that "the General Assembly intends [an] entire statute to be effective and certain."

 The third and final issue we must address is whether Common Pleas erred in adopting the Commission's proposed schedule of distribution. Section 803(d) provides, in relevant part:

> Notwithstanding any other provisions of this section, the liability of that portion of the fund allocated for the purpose of this act shall not exceed $20,000 for any one claim and shall not exceed $100,000 per licensee. If the $100,000 liability of the Real Estate Recovery Fund as provided herein is insufficient to pay in full claims adjudicated valid of all aggrieved persons against any one licensee or registrant, **such $100,000 shall be distributed among them in such ratio that the respective claims of the aggrieved applicants bear to the aggregate of such claims held valid.**

63 P.S. § 455.803(d). (emphasis added). Because the $300,000.00 Fund liability here was insufficient to pay in full the claims of all twenty claimants seeking recovery, which amount was well over two million dollars, Common Pleas determined that it was required to distribute the $300,-000.00 on a pro rata basis, as required by Section 803(d). We agree with that premise. However, without providing any basis or explanation for doing so, Common Pleas then concluded that any claimant seeking recovery of less than $20,000.00 should be paid in full, and each of the remaining claimants should be awarded an equal share of the amount left over. Thus, the distribution by Common Pleas was *not* pro rata.

The plain language of Section 803(d) requires the court to distribute the total amount "in such ratio that the respective claims of the aggrieved applicants bear to the aggregate of such claims held valid." 63 P.S. § 455.803(d). In other words, a ratio must be established by the court, and then applied to *each* claimant, which would divide the amount available for distribution on a pro rata basis to all of the claimants on that *basis*. Nothing in RELRA directs or allows a distribution of small claims on one basis (at 100%), and a distribution to other claimants with larger claims on another, pro rata, basis. The term "pro rata" is defined as "to divide or distribute proportionately." To the extent that the Common Pleas Court varied from this formula, which is mandated by RELRA, it was error. According to our interpretation of Section 803(d), the denominator of the ratio must consist of the total amount of all claims sought by all aggrieved persons, and the numerator in this ratio should be the amount of an individual claim. Any single claim over $20,000, of course, has to be capped at that amount to comply with Section 803(d) of the Act, and it would be this maximum sum, or sums, which would be used in the formulation of both the numerator and the denominator in the fraction.[8] In this case, the individual fractional shares would then be applied to divide the $300,000.00 proportionately among all twenty eligible claimants. Attached is an appendix of our calculations using this pro rata method of calculation,

---

7. 1 Pa.C.S. §§ 1501–1991.

8. As noted in the accompanying appendix, by using the capped amount in calculating the ratio, we are able to distribute almost the entire $300,000 available. Of course, by doing so, some claimants will receive less than they would otherwise receive under simple proration, while others will receive more. However, if the actual amount requested was used in calculating the ratio, the result would be an actual distribution of only $227,371, leaving an excess of over $70,000 that would not be available for distribution.

capping the larger claims at the maximum sum of $20,000.

Common Pleas clearly erred in its conclusion that, for the 17 large claims, the money should be distributed equally to each eligible claimant, regardless of the amount of his or her claim. Accordingly, the judgment of Common Pleas' is reversed, and the matter is remanded for a distribution determination in accordance with this opinion.

## APPENDIX

| LAST NAME | AMOUNT REQUESTED | NON-CAPPED PRORATED AMOUNT[9] | PERMISSIBLE NON-CAPPED DISTRIBUTION[10] | CAPPED PRORATED AMOUNT[11] |
|---|---|---|---|---|
| PIRRUNG | $80,000 | $11,688 | $11,688 | $13,861.56 |
| STAMPONE | $31,476.50 | $4,591 | $20,000 | $13,861.56 |
| EISENHOWER | $30,000 | $4,375 | $4,375 | $13,861.56 |
| TILLI | $115,000 | $16,773 | $16,773 | $13,861.56 |
| JADCZAK | $150,000 | $21,878 | $20,000 | $13,861.56 |
| KITTEL | $50,000 | $7,292 | $7,292 | $13,861.56 |
| FIORAVANTI | $40,000 | $5,834 | $5,834 | $13,861.56 |
| M. JOSCELYNE | $250,000 | $36,464 | $20,000 | $13,861.56 |
| J. JOSCELYNE | $20,000 | $2,917 | $2,917 | $13,861.56 |
| THOMPSON | $60,000 | $8,751 | $8,751 | $13,861.56 |
| SCHWARTZ | $40,000 | $5,834 | $5,834 | $13,861.56 |
| SY | $37,800 | $5,513 | $5,513 | $13,861.56 |
| KAPUSCINSKI | $102,197 | $14,906 | $14,906 | $13,861.56 |
| JANSON ASSOC. | $78,500 | $11,449 | $11,449 | $13,861.56 |
| EGENDORF | $615,000 | $89,701 | $20,000 | $13,861.56 |
| MALATESTA | $57,520.58 | $8,389 | $8,389 | $13,861.56 |
| MALATESTA | $66,647.26 | $9,720 | $9,720 | $13,861.56 |
| MALATESTA | $100,762.00 | $14,696 | $14,696 | $13,861.56 |
| MALATESTA | $31,265.91 | $4,560 | $4,560 | $13,861.56 |
| MALATESTA | $37,575.35 | $5,480 | $5,480 | $13,861.56 |
| MALATESTA | $50,214.65 | $7,324 | $7,324 | $13,861.56 |
| KITTEL | $10,000 | $1,458 | $1,458 | $6,930.78 |
| WRZENSINSKI | $1,600 | $ 231 | $231 | $1,108.92 |
| POPRIK | $626.78 | $ 90 | $90 | $434.41 |
| PAWLUKIEWICZ | $625.00 | $ 91 | $91 | $433.17 |
| | | | | |
| **TOTAL** | $2,056,811.55 | $300,005 | $227,371 | $299,132.42 |

[9] This calculation was made by taking the amount of the claim and dividing it by the total amount of all claims, 2,056,811.55, to obtain a prorated percentage. That percentage was then multiplied by the maximum amount recoverable, $300,000, to arrive at the prorated amount, which was rounded.

[10] This column factors in the $20,000 limit per claim imposed. Accordingly, if the non-capped prorated amount was greater than $20,000, the person would be entitled to $20,000. If the prorated amount was less than $20,000 the claimant could receive the entire amount. The final figures were rounded for ease of calculation.

[11] This calculation was made by first capping all amounts requested at $20,000. The amount of the capped claim was then multiplied by the total amount of all capped claims, $432,851.78, to obtain a percentage and that percentage was then multiplied by the total amount recoverable, $300,000.

## *ORDER*

**NOW,** September 9, 1999, the order of the Court of Common Pleas of Philadelphia County is hereby reversed, and the case remanded for proceedings consistent with this opinion. On remand, the appendix accompanying this Court's opinion, which was based upon the total sum of money requested by each party, is to be utilized for illustrative purposes only and is not to be deemed controlling on the number of "claims" presented to that court for disposition. Common Pleas is directed first to determine the number of claims filed by each claimant under the principles established in *Murphy v. Today's Properties, Ltd.*, 673 A.2d 6 (Pa.Cmwlth. 1996), and the opinion of this Court in this case, and, after determining the number of claims at issue, the Court is then to distribute the funds in accordance with the formula established in the foregoing opinion.

Jurisdiction relinquished.